THE BALTIMORE AND OHIO RAILROAD COMPANY, *vs.* THE STATE OF MARYLAND, use of BRIDGET E. TRÁINOR, WILLIAM H. TRAINOR, and others.

## Contributory Negligence—Proximate Cause—Assessment of Damages.

Damages may be recovered against a rail road company, for the killing of a person who was employed by it at a stipulated price per day, but who was not in its service at the time of the killing, if the killing resulted directly from the want of ordinary care and prudence on the part of the agents of the company, and not from the want of ordinary care and prudence by the deceased, directly contributing to the accident.

And if it appear that the accident would not have occurred if the agents of the rail road company had used, in running the train which occasioned the killing, ordinary prudence and care in giving reasonable and usual signals of its approach, and keeping a proper look-out, the company is liable even if the deceased were guilty of the want of ordinary care and prudence in being on the rail road track at the time of the accident.

Baltimore and Ohio R. R. Co. *vs.* State, use of Trainor, *et al.*

In an action against a rail road company to recover damages for the killing of a person, brought by the State in behalf of the widow and children of the deceased, the jury in assessing the damages should consider the reasonable probabilities of the life of the deceased, and award damages not only for the past losses of the equitable plaintiffs, but for such as they will suffer, as the direct consequence of the killing—the prospective damages for the children to be estimated to their majority, and those for the widow upon the probable duration of her life.

APPEAL from the Court of Common Pleas.

This was an action against the appellant, brought in the name of the State for the use of the widow and children of John Trainor, deceased, to recover damages for his death. The deceased was employed as a spiker, by the appellant. He was paid at the rate of a dollar and fifty cents a day, payable at the end of each month, less any time he might have lost during the month; he was liable to be discharged at any time, on which event he would be paid up to the time of his discharge. His business was to go twice a day over his beat, which extended from the four mile house on the Baltimore and Ohio Rail Road, to the nine mile stone near the Relay House, to see that the track was in order.

On the afternoon of the 14th of July, 1868, about six o'clock, Trainor, having completed his work, was walking on the rail road track from the Relay House in the direction of Elkridge Landing, where he lived; when very near the Thomas viaduct, which crosses the Patapsco river about a hundred yards beyond the Relay House, and just before reaching what is known as the cattle guard—a deep trench at the beginning of the viaduct, to prevent cattle going thereon—he was struck by a train coming from Baltimore and going in the direction of Washington, knocked down and so severely injured that he died the next day. The train which killed Trainor was an extra train sent out from Baltimore by the agents of the appellant, to bring back a pic-nic party from some point on the Washington road.

· *Exception:* The plaintiff offered the following prayers, which the Court granted:

1st. If the jury find from the evidence, that on or about the 14th of July, 1868, John Trainor was killed by the locomotive and cars of the defendant while operated by its agents on its road, and that the equitable plaintiffs are related to him in manner as set forth in the pleadings herein, and that the said killing resulted directly from the want of ordinary care and prudence on the part of the agents of the defendant, and not from the want of ordinary care and prudence of the deceased, directly contributing to the accident, that then the plaintiff is entitled to a verdict, unless at the time of such killing, the jury should find that the said Trainor was in the employment of said defendant.

2d. Even if the jury believe that the said Trainor was guilty of the want of ordinary care and prudence in walking on the track of the defendant, under the circumstances testified to before them; yet if the jury further find, that if the agents of the defendants had used, in and about the running of the train that injured him, ordinary prudence and care in giving reasonable and usual signals of its approach, and in keeping a reasonable look-out, that the said accident would not have occurred, then the plaintiff is entitled to recover, provided they find the other facts set out in the first instruction of the plaintiff.

3d. If, under the instructions of the Court, the jury should find for the plaintiff, then, in assessing the damages, they are to estimate the reasonable probabilities of the life of the deceased, Trainor, and give the equitable plaintiffs such pecuniary damages, not only for past losses, but for such prospective damages as the jury may find that they have suffered, or will suffer, as the direct consequence of the death of the said Trainor; that for his children, these prospective damages may be estimated to their majority, and as to the widow, to such probability of life as the jury may find reasonable under the circumstances.

The defendant offered the following prayers:

1st. If the jury believe from the evidence that the decedent, Trainor, was an employee of the defendant at the time of the injury complained of, and that he was injured by the negligence and carelessness of the other employees of the defendant; yet, the plaintiffs are not entitled to recover, unless they shall satisfy the jury by evidence that the defendant did not use reasonable care in procuring, as co-employees of the decedent, faithful and competent persons in their respective employments, and in procuring for its operations sound machinery upon the train causing the accident.

This prayer the Court refused as offered, but granted, after amendment, by inserting after the word "operations," "sound machinery of suitable construction adapted for the train causing the accident."

2d. If the jury believe from the evidence that John Trainor was employed, and had been for months previously, as a spiker upon the road by the defendant; that the terms of employment were, that he was to go over his beat twice every day, and that it was for no definite period, but to continue until discharged by the company, which the company was at liberty to do at any time, and that the said Trainor was paid every month for so many days, only as he was actually employed, and was liable to be called on for extra work, with an allowance of extra pay therefor; and if the jury shall believe that on the day of the injury to him, he had performed his regular duty, and had not been discharged by the company at the time of said injury, and had left work but a short time before said injury, then the said Trainor, at the time of said injury, was an employee of the defendant within the meaning of the first prayer, though the jury may believe, that at the time of the injury, he had left his work and was going elsewhere on his private business.

This prayer was rejected.

3d. If the jury believe from the evidence that the decedent, John Trainor, was on the railway track of the defend-

ant, and on or near the cow-break, at the entrance of the viaduct of the defendant, at the time of the accident complained of, and that he was not a passenger on the train; and shall further believe that the company had given public notice, set up at the said viaduct, warning persons not to cross it, then the defendant is not liable in this action, though its agents might, by extraordinary care, have avoided the injury, if they shall believe that it was the result of accident, and not of wanton purpose on the part of the defendant or its agents; even though the jury may believe further that he was not an employee of the company at the time of the accident.

Rejected as offered, but granted with the following addition: "Provided the jury should find that, by the exercise of ordinary care and prudence on the part of the defendant's agents, the accident could not have been avoided."

4th. That, so far as relates to the decedent, John Trainor, the defendant, in the use of its train was only bound to use such diligence and care as prudent and discreet persons would use and exercise on such occasions; and if, owing to the absence of such diligence and care, John Trainor was injured, he is still not entitled to recover, if he contributed to bring the injury on himself by his own negligence and want of reasonable care, even though the jury may believe he was not an employee of the defendant at the time of the accident.

Rejected as offered, but granted with the following addition: "Provided that such negligence and want of care by decedent could not have been avoided by the use of ordinary care on the part of the agents of the defendant."

5th. If the jury believe from the evidence, that the defendant was in the ordinary use of its railway and trains; that by the usual signal of its whistle before reaching the Relay station, it gave notice that the train was bound upon the Washington Branch of its road; that said whistle was within the range of ordinary hearing by persons at the viaduct, and was well known

## OCTOBER TERM, 1870. 547

Baltimore and Ohio R. R. Co vs. State, use of Trainor, et al.

to employees of the company, of whom decedent was one; that the train was proceeding at an ordinary speed when the injury occurred; and shall further believe that the agents of the company on the train did not see the decedent on the track, then they must find for the defendant, if they further believe that the said decedent was on or near the cow-break at the entrance of the viaduct, and on the track upon which a train from Baltimore would pass to Washington, and might, by reasonable caution and care, have avoided the train and prevented the accident.

This prayer the Court rejected as offered, but granted, after amendment, by inserting after words "decedent on the track," "and by the use of ordinary care and prudence could not have seen him there in time to have avoided the accident."

6th. If the jury shall believe from the evidence, that at the time of the happening of the accident, the man Trainor was an employee in the service of the defendant, then the plaintiff is not entitled to recover in this action, even though the jury shall believe that said Trainor came to his death through the negligence of one or more of the employees upon the train causing the accident, unless the jury shall also believe from the evidence, that in selecting the employees or servants through whose negligence the accident occurred, the defendant did not use reasonable care in procuring for its operations sound machinery and faithful and competent employees; and the plaintiff has offered no evidence from which the jury might find that the defendant did not use such reasonable care.

This prayer the Court rejected.

7th. If the jury believe from the evidence that the company had put up in legible characters the following notice at the entrance of the viaduct: "All persons are hereby warned not to walk upon or over the viaduct. Any such trespass will greatly endanger their lives. The width of the roadway admits of no foot-path, and both tracks are subject to use at all times by locomotives and trains in both directions." And

if they shall further believe that the decedent, knowing of the said notice or its substance, was at or near the said viaduct with purpose to pass over the same, or was on the railroad track near the said viaduct, and was walking thereon, and not at a public crossing of the same, then the proof of negligence on his part is conclusive, and if he was injured in consequence thereof, he is not entitled to recover.

This prayer the Court rejected as offered, but granted, as amended by the following addition: "Provided, that the agents of the defendant were using ordinary care and prudence in the running of the train, and could not, by the use of such ordinary care and prudence, have prevented the accident."

The defendant excepted to the granting of the plaintiff's prayers, to the rejection of its prayers, and to the modifications made to its first, third, fourth, fifth and seventh prayers by the Court. The verdict and judgment being for the plaintiff, the defendant appealed.

The cause was argued before BARTOL, C. J., BRENT, MAULSBY, MILLER and ALVEY, J.

*Ferdinand C. Latrobe*, for the appellant.

If there was a want of ordinary care on the part of Trainor in walking on the railroad track, although it may not in itself have altogether produced the injury, yet if the accident would not have happened had there not been such a want of ordinary care, then from the nature of the accident, the negligence of the decedent was of such a character, that although it may have been commingled with negligence on the part of the defendant's agents, yet the negligent acts of the two parties were not susceptible of apportionment, and therefore the plaintiff could not recover. *The Northern Central Rail Road Company vs. State, use of Geis*, 31 *Md.*, 358; *Witherly vs. Regents' Canal Co.*, 104 *E. C. L. R.*, 2.

The second prayer of the plaintiff ignores the principle, that a want of ordinary care on the part of the deceased by which the accident was caused, would prevent the plaintiff's recovery. If it was a want of ordinary care and prudence on the part of Trainor, to walk upon the track under the circumstances, there being no actual necessity for his so doing, and if the accident would not have happened had it not been for such a want of care, then the walking on the track was the direct, or proximate, or immediate cause of the accident, and was such a contribution to his own injury as will prevent the plaintiff's recovering. The right to recover is dependent upon the deceased having made use of ordinary care to avoid the accident, and if he was a contributor to his own misfortune by his own negligence, no recovery can be had although the defendant by the use of greater diligence might have prevented the accident. *Baltimore and Ohio R. R. Company vs. State, use of Miller,* 29 *Md.,* 262; *Baltimore and Ohio R. R. Company vs. State, use of Freyer,* 30 *Md.,* 52; *Northern Central R. R. Company vs. State, use of Geis,* 31 *Md.,* 358.

The plaintiff's third prayer was objectionable because it instructed the jury to consider only the probability of life of the widow of Trainor, without taking into consideration a possible termination of widowhood by another marriage, when she would be relieved from loss through the death of Trainor. The statute limiting the damages to the actual loss, this possibility should have been estimated by the jury in awarding damages.

The first prayer of the defendant as offered should not have been rejected; its language requiring the defendant to use reasonable care in procuring, "Sound machinery upon the train causing the accident," fully complies with the law. The addition made by the Court was unnecessary, and although not very material, was yet calculated to mislead the jury, by leading them to suppose that some particular kind of machinery was required specially for operating the train causing the accident. *Shauck vs. The Northern Central R. R. Company,* 25 *Md.,* 462.

The second prayer of the defendant requested the Court to instruct the jury as to what constituted the relations of employer and employé, and the proposition stated in the prayer was so plain that the Court should have stated it as law to the jury. The fact that Trainor had completed his day's work, did not, in the absence of a discharge, release him from the relation of employé. *Tunny vs. Midland Railway Co.*, 12 *Jurist, N. S.*, 691; 1 *Redfield on Railways*, 527 *and note on page* 534; *Wonder vs. B. & O. R. R. Co.*, 32 *Md.*, 411.

The rejection of the third prayer of the defendant as offered, and granting it with an amendment was erroneous. The third prayer of the defendant as offered was in compliance with the law. The evidence shows that the intention of the deceased was to cross the viaduct. By so doing he was clearly violating a reasonable regulation of the defendant brought to his attention by the notice placed there in a conspicuous position forbidding persons from crossing and warning them of the danger of so doing. It was, therefore, conclusive evidence of negligence on his part if he was injured while intent upon violating this regulation, and the plaintiff was not entitled to recover. *Baltimore City Passenger Railway vs. Wilkinson*, 30 *Md.*, 225.

The amendment made by the Court to this prayer, renders vague and uncertain what instruction the Court really intended giving to the jury.

The rejection of the fourth prayer of the defendant as offered, and granting it with an amendment, was erroneous. As offered it complied with the law, and is in fact the very language of the Court of Appeals in the case of *Bannon vs. The Baltimore and Ohio R. R. Co.*, 24 *Md.*, 126. It is also in compliance with the law in the case of *The Northern Central R. R. Co. vs. The State, use of Geis*, 31 *Md.*, 357.

The prayer as amended by the Court was vague and uncertain in meaning, and was certainly calculated to mislead the jury on account of the difficulty in properly construing its meaning.

The fifth prayer of the defendant instructed the jury that their verdict must be for the defendant if the decedent could have avoided the accident by the exercise of reasonable caution and care. The amendment made by the Court was not required by the law of Maryland. *Northern Central R. R. Co. vs. State, use of Geis*, 31 *Md.*, 357; *Baltimore & Ohio R. R. Co. vs. State, ı se of Miller*, 29 *Md.*, 262.

The rejection of the defendant's sixth prayer was erroneous. The defendant was certainly entitled to the judgment of the jury upon the question, whether or not the man Trainor was an employé, in fact by the rejection of the defendant's second prayer, the Court submitted that question to the jury. And if the jury should find that he was an employé, then the law asked for by the prayer was in accordance with the ruling of the Court of Appeals in the case of *Wonder vs. The Baltimore and Ohio Rail Road Company*, 32 *Md.*, 411.

There was no evidence in this case from which the jury might find that the defendant had not used reasonable care in procuring for its operations sound machinery and faithful and competent employés.

The Court should have instructed the jury that the facts stated hypothetically in the seventh prayer if found by the jury constituted in law such negligence on the part of the decedent as would bar the plaintiff's recovery.

*Michael A. Mullin* and *Robert J. Brent*, for the appellee.

To determine whether at the time of the accident Trainor was in the employment of the defendant, the contract between them must be considered. Trainor was hired at a stipulated price per day, payable at the end of the month, and liable to be discharged at any time. At the time of the accident he was not in the service of the company, he had concluded his day's work and was going in the direction of his home. *Rex vs. Pucklechurch*, 5 *East*, 384; *Rex vs. Mitcham*, 12 *East*, 352; *Robertson vs. Jenner, et al.*, 15 *Law Times Reports, N. S.*, 514; *Schouler's Dom. Rel.*, 607; *Wyngert vs. Norton,*

Baltimore and Ohio R. R. Co. vs. State, use of Trainor, et al.

4 Mich., 286; Russell vs. Hudson River Rail Road Company, 5 Duer, 39.

Even if the decedent were, at the time of the injury, an employé of the defendant, the latter under the evidence before the jury is still responsible.   The general rule is that when injury is inflicted on one servant by the negligent act of his fellow-servant, the common master is not responsible, provided the master exercise all reasonable care in procuring for his operations sound machinery and capable and competent employés.   Priestly vs. Fowler, 3 Mees. & Wels., 1 ;  O'Connell vs. B. & O. R. R. Co., 20 Md., 222; Cumberland Coal and Iron Co. vs. Scally, 27 Md., 603.                              ᾽

In this cause there was evidence that the conductor of the train was regularly employed on the main stem; he himself states he did not recollect how long before he had acted as conductor on the Washington Branch, except that he had run down several times during Mr. Lincoln's administration; a man who, from his testimony, knew nothing, and from his opportunities could not be expected to know anything of the service on which he was sent.   What is said of the conductor can be doubly said of the engineer, who, according to his own statement, was not employed on the road at all; was merely employed in making up trains in the depot yard, and had not been on the Washington Branch for four years before.   The brakemen were also unaccustomed to the Washington Branch.

There was also evidence of defective machinery used.   The engine sent out by the company was a freight engine, used for regulating around the depot yard, consequently had no pilot or cowcatcher, as is usual with engines used on the road.

Assuming that Trainor, at the time of the injury, was not a servant of the company, there was evidence of such negligence on the part of the defendant, and absence of negligence on the part of the deceased to support the action, and the instruction given by the Court was correct.   Northern Central Railway Co. vs. State, use of Price, 29 Md., 435, 436, 437, and the cases there cited with approbation.

MAULSBY, J., delivered the opinion of the Court.

Much of the law applicable to this case is well settled, and is stated with clearness and precision in *Northern Central Railway Co. vs. State, use of Price*, 29 *Md.*, 421, thus, "if the negligence of the defendant was the proximate, and that of the deceased the remote, cause of the injury, the action is maintainable, notwithstanding the deceased may not have been entirely without fault."

Tested by this rule we can perceive no error in the plaintiffs' first and second prayers which were granted by the Court below. It is objected by the appellant to the first prayer, that it admits that there may have been mutual or concurrent negligence, and that it leaves to the jury to exactly ascertain how much each party contributed, by his negligence, to the production of the injury, in which case it would be impossible to apportion the damages, and that it is therefore obnoxious to the rule announced in *Northern Central Railway Co. vs. State, use of Geis, et al.*, 31 *Md.*, 357. In that case the rule invoked by the appellant is stated to be that an action will not lie where the negligence imputable to both parties was concurrent, and co-operated to produce the injury complained of. There can be no difficulty in distinguishing between negligence of both parties immediately concurring to, and co-operating in, the production of the injury, and the proposition of the prayer that if the killing resulted from the want of ordinary care of the defendant, and not from the want of ordinary care of the deceased, directly contributing to the injury, the action lies. The second prayer contains, substantially, the same legal proposition with the first, and the appellant's objection is substantially the same. It is argued that if the deceased walked on the track, and his walking on the track was want of ordinary care, and the accident would not have happened if he had not walked on the track, then such walking was the proximate cause of the accident, and the plaintiff cannot recover. This argument does not justly apply the rule in 29 *Md.*, 421. By "proxi-

mate cause" is intended an act which directly produced, or concurred directly in producing, the injury. By "remote cause" is intended that which may have happened, and yet no injury have occurred, notwithstanding that no injury could have occurred, if it had not happened. No man would ever have been killed on a railway, if he had never gone on or near the track. But if a man does, imprudently and incautiously, go on a rail road track, and is killed or injured by a train of cars, the company is responsible, unless it has used reasonable care and caution to avert it, provided the circumstances were not such when the party went on the track as to threaten direct injury, and provided that being on the track he did nothing, positive or negative, to contribute to the immediate injury. Any attempt to make plainer the rule laid down in the case referred to, than it is made by the language of the Judge who delivered the opinion, is more likely to obscure than to illustrate it.

Nor can we appreciate the force of the appellant's objection to the plaintiff's third prayer. It is, that instead of allowing the jury, in estimating damages, to consider the probability of life of the widow of deceased, it ought to have limited them to a consideration of the probable continuation of her widowhood, and that they should have been required to measure the period when, in their opinion, she would marry again, and allow damages to that period only.

Such a contingency this Court cannot recognize as a fit element to enter into a verdict in such a case. We think that the prayers of the appellee were properly granted.

The first, second and sixth prayers of the appellant are based on the hypothesis that the deceased was an employee of the appellant at the time of the injury which resulted in his death. The propositions contained in these prayers could arise only on the idea that he was in the course of discharging the duties of his employment when the injury occurred. The proof on both sides is that he was not, at the time of the injury, so occupied, but that his duties to

his employer having been discharged, he was on his way to his home. His employment was as a spiker, and his duty was to go over the track twice a day from the four mile house to the nine mile stone, to see that it was in order. At six o'clock in the evening his duty ended, to be resumed the next morning, unless discharged in the meantime. When the injury occurred, he was not on the track between the four mile house and the nine mile stone, but had finished his day's work, laid aside his tools, and was proceeding along, or on the track of, the Washington Branch road, towards his home on the opposite side of the Patapsco river. This being the undisputed evidence on this subject, it is unnecessary that we shall consider these prayers further than to say there is no proof to sustain them, and therefore they are abstractions in this case, and for this reason were properly rejected.

The third and seventh prayers of appellant present substantially the same question, that if the deceased was at the entrance of the viaduct, in the language of the third, or at or near the viaduct with purpose to walk over the same, or was on the rail road track near said viaduct, and walking thereon, and not at a public crossing of the same, in the language of the seventh, when the injury occurred, and that the appellant had given public notice, set up at the viaduct, warning persons not to cross it, and that the injury was the result of accident, and not wanton, then the plaintiff is not entitled to recover. These prayers were rejected as offered, but granted with additions putting it to the jury to find that the defendant was using ordinary care, and that by the use of ordinary care it could not avoid the injury.

There are no circumstances under which the defendant could be relieved of the duty of using ordinary care. What constitutes ordinary care may vary with varying circumstances, but, as a general rule, it is for the jury to determine, and we discover nothing to relieve this case from the operation of the general rule. The proposition of the prayers

as offered, is that the public notice or warning, set up at the viaduct, is a bar to recovery, and relieves the defendant from the use of ordinary care on and about the viaduct, and from liability for any injury that might occur, at .or on the viaduct, from the want of ordinary care on its part.

That proposition is not sound. The notice or warning was proper to be considered in determining the question of care, but was not, in itself, a fact which dispensed with the necessity of using care. An illustration can be found in the fifth and eighteenth rules or regulations of the appellant for the conduct of its trains. The fifth rule requires the passenger engineman, on his approach to all bridges (amongst other things) to sound his whistle clearly and distinctly, and cause his fireman to ring the bell. There may be other purposes in this requirement, but manifestly one purpose is to give warning to persons who may, however improperly, be on a bridge. The eighteenth rule requires the enginemen, while running trains, to keep a sharp lookout for cattle and live stock on the way, and on observing any on or about the track, to reduce speed, and use *great care to avoid injuring them.* It would be great injustice to the appellant to construe its regulations as intending to evidence greater tenderness towards cattle and other live stock, than towards human life or limb. These rules manifest the sense of the appellant as to what constitutes proper care, and the standard, which it thus establishes for itself, is correct. If they could be construed as establishing a rule of care and caution, solely for the protection of its own property and interests, which however is forbidden by the language of the eighteenth rule, still others are entitled to the benefit of the same rule. That which constitutes ordinary care for its own interests, constitutes it as well for others. And as the setting up a notice or warning, according to the appellant's own estimate, is not sufficient care to relieve it from other acts of care, in addition, as sounding the "whistle clearly and distinctly," and causing the "fireman to ring the bell" on approaching a bridge, there

could be no propriety in relieving it from the duty of observing its own rule of care, which was the effect of the prayers. The third and seventh prayers were properly rejected, without the additions of the Court, and they, properly construed, and as now corrected by the agreement to amend, presented the law correctly. The appellant was not injured by them.

The fourth prayer was erroneous in that, it failed to require the supposed contribution by the deceased to bring the injury on himself, by his own negligence and want of proper care, to be found to be the proximate cause of the injury. If the hypothetical negligence of the deceased were the remote cause of the injury, and the negligence of the appellant the *proximate* cause, the former did not bar the right to recover.

The addition of the Court substantially met this proposition, but without the addition the prayer ought to have been rejected, and with the addition it could operate no injury to the appellant.

The fifth prayer was based on the proposition that the only duty incumbent on the appellant, in the use of ordinary care, was to give the usual signal, that its train was bound upon the Washington branch of its road, by sounding the whistle before reaching the relay station. The proof of the appellant is that the cattle guard at the entrance on the viaduct, or bridge, at or near which the injury occurred, is eighteen hundred and eighty-four feet distant from the switches. That the whistle was sounded, according to one witness, (Burton,) about six hundred yards east of the switches, the injury having occurred in the opposite direction, and by the other (Palmer) about two hundred yards. Both these witnesses, one of whom was the conductor, and the other was the engineman, prove that the whistle was not sounded, nor the bell rung on the approach of the train to the viaduct. The injury occurred at or within a few feet of the entrance on the viaduct. There was testimony that it was usual for all passenger trains to blow the whistle between the switches and the viaduct. The fifth rule required not only that to be done,

but also the bell to be rung. The prayer asserted that a much less degree of care was sufficient. This statement of the proof sufficiently demonstrates the error of the prayer. Without regard to the addition made by the Court, it was properly rejected, but that stated the law as favorably to the appellant as it had a right to require.

*Judgment affirmed.*

(Decided 26th January, 1871.)

