(Decided 6th February, 1874.)

---

JOHN T. McMAHON, by his next friend, MARTIN McMAHON; *vs.* THE NORTHERN CENTRAL RAILWAY COMPANY.

*Province of the Court and Jury—Liability of a Railway Company for Injuries caused by the Negligence of its agents—Contributory Negligence—Ordinary Care and Prudence—Measure of Damages.*

In an action for damages for injuries occasioned by the alleged negligence of the defendant, the Court should never take the question of negligence from the jury, unless the conduct of the plaintiff relied on as amounting in law, to contributory negligence, is established by clear and uncontradicted evidence.

McMahon *vs.* North. Cent. Railway Co.

Where a boy in attempting to pass under a car moving along the street, is run over and seriously injured, he is not entitled to recover damages from the railway company for the injury sustained; the attempt to pass under the car while in motion, being such an act of carelessness as amounts in law to contributory negligence.

In an action to recover damages from a railroad company, for injuries to a child, between five and six years old, alleged to have been caused by the negligence of the defendant's agents, the plaintiff is entitled to recover, if it appear from the evidence, that the injuries resulted directly from the want of ordinary care and prudence on the part of the defendant's agents, and not from the want of such care and prudence on the part of the plaintiff, as ought, under the circumstances, to be reasonably expected from one of his age and intelligence, nor from the want of ordinary care and prudence on the part of his parents, directly contributing to the accident.

The plaintiff in such case would also be entitled to recover, if the injuries complained of resulted from the want of ordinary care and caution on the part of the defendant's agents, provided it should appear from the evidence that the accident causing the injury, could not have been avoided by the exercise of such care and caution by the plaintiff as ought, under the circumstances, to be reasonably expected from one of his age and intelligence, or by the exercise of ordinary care and caution on the part of his parents.

In such action, the jury, in estimating the damages, are to consider the health and condition of the plaintiff, before the injury complained of, as compared with his health and condition consequent upon the injury, and whether it is in its nature permanent, and how far it is calculated to disable the plaintiff from engaging in those mechanical pursuits and employments for which, in the absence of such injury, he would have been qualified; and also the physical and mental suffering to which he was subjected, by reason of the injury, and to allow such damages as in their opinion will be a fair and just compensation for the injury which he has sustained.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

*Exception.*—The plaintiff offered five prayers, the first and second of which are set out in the opinion of the Court; the others are as follows:

3. Even if the jury shall believe that the said John T. McMahon was guilty of such want of ordinary care and prudence as ought, under all the circumstances, to have been reasonably expected from one of his age and intelligence, in going on the track of the defendant, under the circumstances testified to before them; even should they also find a want of ordinary care and prudence on the part of the father and mother of the said John T. McMahon; yet, if the jury further believe, that if the agents of the defendant had used, in and about the management of the car or cars which injured him, ordinary care and prudence in giving usual and reasonable signals of moving said cars, and in keeping a reasonable lookout, that the accident would not have occurred, then the plaintiff is entitled to recover; provided they find the other facts set out in the plaintiff's second prayer.

4. If the jury believe from the evidence that the defendant placed their railroad cars along the line of Canal street, between Bank and Gough streets, in such a manner as to prevent the passage of foot-passengers, from one side of Canal street to the other; and shall further believe, that while occupying Canal street with their railroad cars, the defendant did not leave an opening or space of not less than twenty feet at or near the centre of the square between Bank and Gough streets, or at equal distances from said last mentioned streets; and shall further find, by reason thereof, the plaintiff was injured, then the defendant was a wrong-doer, and the plaintiff is entitled to recover, unless the jury shall find there was such a want of ordinary care and caution by the plaintiff as ought, under all the circumstances, to have been reasonably expected from one of his age and intelligence, or want of ordinary care and caution on the part of the father and mother of the plaintiff.

5. That if, under the plaintiff's first, second, third or fourth prayers the jury shall find a verdict for the plain-

tiff, they are not at liberty to give, upon the evidence in this case against the defendant, exemplary, punitive or vindictive damages; but, in estimating the damages, they are to consider the health and condition of the plaintiff, before the injury complained of, as compared with his present condition in consequence of the said injury, and whether the said injury is in its nature permanent, and how far it is calculated to disable the plaintiff from engaging in those mechanical pursuits and employments for which, in the absence of said injury, he would have been qualified; and also the physical and mental suffering to which, he was subjected, by reason of the said injury, and to allow such damages as in the opinion of the jury will be a fair and just compensation for the injury which the plaintiff has sustained.

The defendant offered two prayers, which will be found in the opinion of the Court. The City Court, (SCOTT, J.,) rejected the prayers of the plaintiff and granted those of the defendant. The plaintiff excepted and the verdict and judgment being against him, he appealed.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, BRENT and ROBINSON, J.

*C. D. McFarland,* for the appellant.

There was evidence to support the plaintiff's first prayer, and it should have been granted. The cars had remained on the street for at least four hours, in a manner which violated an ordinance of the city, and, then were suddenly started without warning. If the plaintiff had attempted to pass in front of the horses or between the cars, either would have been the remote cause; while the sudden movement, without the usual signal, was the direct cause of the injury. An adult may be in a situation, and to such person it may be almost free from danger, while a like situation would be perilous to an infant of tender

years. The defendant is required to exercise such degree of care, as is commensurate with the dangers of its business. Towards adults a certain well defined degree of care is exacted, and in determining it the intelligence which enables them to avoid injury is taken into consideration, while towards an infant not possessed of such intelligence, the degree of care must be higher. *Balto. & Ohio R. R. Co. vs. State, use of Trainor,* 33 *Md.,* 544; *The Phila. & Reading R. R. Co. vs. Spearen,* 47 *Penn.,* 304.

The plaintiff's second prayer follows the language of the first prayer of the plaintiff in *Fryer's Case,* and should have been granted. *Balto. & Ohio R. R. Co. vs. State, use of Fryer,* 30 *Md.,* 47. If this prayer had been granted, the question of the negligence of the defendant, the care and caution of the plaintiff, and that of his father and mother, would have been submitted to the jury, independent of the question of the proximate and remote cause of the injury. The plaintiff was injured by the cars of the defendant, while its agents had full control of them. The parents of the injured boy did all that the law required of them, in cautioning him to keep away from the cars and not to go under them.

The plaintiff's third prayer should have been granted. Even should it be successfully contended, that the plaintiff did not exercise such care as one of his age and intelligence ought to have exercised, and that his parents did not exercise ordinary care; yet had the defendant placed some one on the west side of the cars,—a reasonable requirement,—the accident which caused the injury would not, in all probability, have happened. If the defendant had attracted the plaintiff's attention, by blowing a horn, he would probably have avoided danger, for living near the cars, he doubtless knew the object of such a signal. It was especially the duty of the defendant to give notice of the movement of the cars, in view of the length of time

they had remained on the street. *Balto. & Ohio R. R. Co. vs. State, use of Trainor, et al.*, 33 *Md.*, 544.

The plaintiff's fourth prayer should have been granted. If a corporation violates a regulation ordained for the protection of the lives and limbs of persons, it is highly culpable, and shows a reckless disregard of its obligations. It is prosecuting its business in an unlawful manner, and if injury happen, it should be held to a strict accountability. If by the act of one person another is injured, the rule of law applied to the person causing the injury, is more favorable to him, if in all things he is obedient to the laws of the State and of the municipal government; than if he openly violates them. The violation of this ordinance, it may be almost conclusively inferred, was the cause of the injury. Had its provisions been obeyed, the plaintiff would have had an unobstructed passage, in a nearly direct line from the junk store to his house, of which he could have availed himself and passed over in safety. *Shearman & Redfield on Negligence, sec.* 484, *and note* ; *Schmidt, an infant, vs. The Milwaukee and St. Paul R. R. Co.*, 23 *Wis.*, 186 ; *Liddy vs St. Louis R. R. Co.*, 40 *Mo.*, 506 ; *Bradley vs. Boston and Maine R. R.*, 2 *Cush.*, 543 ; *Wilson vs. Susquehannah Turnpike Co.*, 21 *Barb.*, 79 ; *Wright vs. Malden and Melrose R. R. Co.*, 4 *Allen*, 290 ; *Wanless vs. The North Eastern R. R. Co.*, 6 *Queen's Bench*, 487, (*L. R.*)

The plaintiff's fifth prayer should have been granted. *Bannon vs. Balto. and Ohio R. R. Co.*, 24 *Md.*, 115.

The defendant's prayers were improperly granted. Negligence is generally a question of fact for the jury. In this case there is no prominent or decisive act unconnected with other circumstances, in regard to the effect and character of which, no room is left for ordinary minds to differ, which is necessary in order to make it an exception to the general rule. The attending circumstances of the transaction of which there were a variety, should have

been submitted to the consideration of the jury. *Balto. and Ohio R. R. Co. vs. Fitzpatrick,* 35 *Md.,* 46 ; *Gay vs. Winter,* 34 *Cal.,* 153; *North Penn. R. R. Co. vs. Mahoney,* 57 *Penn. State Rep.,* 187 ; *Morgan vs. Bitzenberger,* 3 *Gill,* 355 ; *Lynch vs. Nurdin,* 41 *Eng. Com. Law,* 422; *Fulton vs. Maccracken,* 18 *Md.,* 542.

The manner and circumstances under which the plain-tiff was sent upon the street, was not of itself such neg-ligence as will prevent a recovery, nor is such care required of a child as of an adult.. *Honegsberger vs. The Second Av. R. R. Co.,* 1 *Daly's Rep.,* 89 ; *Robinson vs. Cone,* 22 *Vermont,* 221 ; *Gardner vs. Grace,* 1 *Foster & Finlason,* 359 ; *Mulligan vs. Curtis,* 100 *Mass.,* 512 ; *Boland and Wife vs. Missouri R. R. Co.,* 36 *Mo.,* 484 ; *Birge vs. Gardiner,* 19 *Conn.,* 507 ; *Rauch vs. Lloyd and Hill,* 31 *Penn. State Rep.,* 358 ;. *Penn. R. R. Co. vs. Kelley,* 31 *Penn. State Rep.,* 372 ; *Drew vs. Sixth Av. R. R. Co ,* 26 *N. Y.,* 52.

*Bernard Carter* and *Wm. Henry Norris,* for the appellee.

The main question is as to the correctness of the Court in granting the defendant's prayers, or either of them ; for if the Court did right in granting *either one* of the defendant's prayers, there is an end of the appeal ; and it is immaterial whether the Court erred in granting the other of the defendant's prayers, or whether or not the plaintiff's prayers abstractly considered, contained correct propositions of law.

Upon the state of facts disclosed by the record, and the inferences reasonably deducible therefrom, the defendant had a right to ask the instruction contained within its first prayer, in perfect keeping with the principle announced in 31 *Md.,* 370,. (*Shipley's Case,*) treating the act of the plaintiff in attempting to go, or crawl under the cars as such a "glaring act of carelessness as will prevent his recovery ;" and with the principle announced in 35 *Md.,*

46, (*Fitzpatrick's Case*), that "many cases may be suggested where questions of negligence are matters of law; such cases always present some prominent and decisive act in regard to the effect, of which there is no room for doubt." See also, *Gorter vs. M. & C. C. of B.*, *Liber G. E. and J. S. F.*, *No.* 1, *folio* 165, &c., of "*Opinions Unreported.*"

But independent of the act of the child, the mother's negligence, if the child is to be considered as not having sufficient discretion and intelligence to obey her command, though the father says he was a boy of unusual intelligence for one of his years—in sending her child on the errand, with the danger of its attempting to go under the cars, instead of walking herself across the street, is itself sufficient to have justified the Court in granting the defendant's first prayer. Her negligence is to be imputed to the child. *Balto. & Ohio R. R. Co. vs. Fryer*, 30 *Md.*, 51; *Hartfield vs. Roper*, 21 *Wend.*, 615.

If the child had not sufficient discretion and intelligence, the mother was in fault; if he had, he was in fault; and in either event, the plaintiff cannot recover.

The burden of proof is on the plaintiff to show that his negligence, or that of his parents, did not directly lead to the accident. *Keech vs. Balto. & Wash. R. R. Co.*, 17 *Md.*, 32; *Coughlan vs. Balto. & Ohio R. R. Co.*, 24 *Md.*, 84. And the evidence fails altogether to sustain this burden of proof; and the Court did right in granting the defendant's first prayer.

The defendant's second prayer was properly granted. This case comes within the principle stated in the case of *Davis vs. Davis*, 7 *Har. & J.*, 36; *B. & O. R. R. Co. vs. Shipley*, 31 *Md.*, 370; that is to say "the evidence of negligence on the part of the defendant is so slight, and inconclusive in its nature, as to demand from the Court an instruction as to its legal insufficiency to prove negligence, in order to prevent the jury from indulging in wild speculation or irrational conjecture."

The record contains no evidence showing that the plaintiff was run over by the cars, in consequence of the negligence of the agents of the defendant, and in the language of this Court in *Shipley's Case*, 31 *Md.*, 375, the jury could not have found said negligence without "indulging in wild speculation or irrational conjecture."

The evidence of the witnesses shows that no such space was left.

There is not the slightest evidence to show that the omission to leave an opening or space in the centre of the square, as required by the Ordinance of the City, was the cause of the plaintiff being run over. Upon the contrary the fact that the cars were well fastened together, and thus leaving no temptation to the plaintiff to attempt to pass through them, shows that the plaintiff could only have got under the cars by attempting to crawl under them, and, therefore, the jury could not legally attribute the injury to the plaintiff to the violation of the city Ordinance. *N. C. R. R. vs. Geis*, 31 *Md.*, 365.

There is nothing in the evidence from which the jury could determine whether the plaintiff attempted to get through the cars while they were standing still, or after they had started, though, from the shortness of the time which elapsed after he left the junk store, it is more probable his attempt was made after they started, and if this was the case, then, at the time of the attempt so made, the defendant was not violating the Ordinance, as the cars were no longer standing in the street, which is the thing prohibited, but were in motion, and in a minute the whole street would have been clear.

There was an entire absence of evidence, therefore, that the Ordinance was being violated at the time of the injury to the plaintiff, and the jury could not have found the affirmative, except by "wild speculation or irrational conjecture."

There is no evidence, that the brakeman was not in the strictest discharge of his duty; as the cars had just started when the accident happened, the place of duty of the brakeman was in all probability on the ground, and so far as watching to keep boys from going under the cars, if this is supposed to be the duty of the agents of the defendant, he was in a much more serviceable position than if he had been on the cars; nor is there any evidence that whilst thus walking beside the cars, he was not in a perfectly proper position both to give notice to the driver when to stop, and also in a moment to apply his brakes. A car propelled by horse power is, of course, in all these respects altogether different from one by steam. At all events there was no evidence offered by the plaintiff, that the brakeman was not in his proper position; nor any evidence that either he or the driver knew, or could by ordinary care and diligence, have known in time, to prevent the accident, that the plaintiff was under the cars, there not being the slightest evidence *when* he got under them.

ROBINSON, J., delivered the opinion of the Court.

This suit was brought by the plaintiff through his next friend, to recover damages for injuries alleged to have been caused by the negligence of the defendant. At the time of the injury, the plaintiff was five years and nine months old, and lived with his parents on the east side of Canal street, between Gough and Bank, in the city of Baltimore. The defendant owns two railroad tracks on Canal street, which were used for freight cars drawn by horses. About ten o'clock on the morning of the 17th of December, 1870, the mother of the plaintiff sent him with a basket of rags to a junk store, situate on the west side of Canal street. She went to her front door with him, and seeing the street blocked by cars, from Fawn street to Bank, cautioned him to keep away from them,

and told him to go up to Gough street, and thence to cross Canal street. The plaintiff went to the junk store, sold his rags, and on his way home was run over by the defendant's cars, and so injured as to render amputation of his leg necessary to save his life. One of the witnesses who was driving a wagon between the two railroad tracks on Canal street, going towards Bank, saw the car wheel on the east rail of the west track, pass over the plaintiff's leg. The brakeman was walking leisurely behind this witness, and called several times to the driver to stop, but the latter did not seem to hear him, and it was some time before the cars were stopped. The cars started suddenly, and evidence was offered to prove that no signal or warning of any kind was given at the time of starting. The driver sometimes blew a horn, and sometimes he did not.

The plaintiff also offered in evidence an Ordinance of the city of Baltimore, providing that in all cases where a railroad company occupies a street with cars, an opening of not less than *twenty feet* shall be left at or near the centre of the square, in order that foot passengers, carts, drays and other vehicles, may pass from one side of the street to the other; and proved that no such opening was left by the defendant.

The plaintiff was a boy of unusual intelligence, and was in the same class at school with an elder brother eight years old.

Upon these facts, no evidence being offered by the defendant, the Court instructed the jury,

1st. That the plaintiff contributed to his own injury, and therefore was not entitled to recover under the circumstances of this case.

2d. That there was no evidence of any negligence, or want of care on the part of the defendant, which under the circumstances of this case, caused the injury to the plaintiff.

To the granting of these instructions, and to the refusal of the several prayers offered by the plaintiff, he excepted.

The appellee admits that the question of negligence as a general rule, is one for the determination of a jury, but contends that in this case, the evidence offered on the part of the appellant, proves such carelessness or want of ordinary care on his part as to amount *in law* to contributory negligence, and that the Court was, therefore, right in taking the case from the jury. It is true where the *direct fact* in issue is established by uncontradicted evidence, and *such fact* is *decisive of the cause* under trial, a question of law is raised, which it is the duty of the Court to decide. Cases may and sometimes do occur in which the uncontradicted evidence proves such a glaring act of carelessness on the part of the plaintiff as to amount in law to contributory negligence, and in such it is the duty of the Court when requested to decide the question without the intervention of the jury. *Lewis vs. The Baltimore & Ohio Railroad Co.*, 38 *Md.*, 588, and *The Pittsburg & Connellsville Railroad Co. vs. Andrews, ante p.* 329.

But in no case ought the Court to take the question of negligence from the jury, unless the conduct of the plaintiff relied on as amounting *in law* to contributory negligence, is established by *clear and uncontradicted* evidence. In support of the Court's instruction in this case, it is insisted that the evidence conclusively proves that the injury complained of was occasioned by an attempt on the part of the plaintiff, to pass under the cars, while in motion. If this fact had been established by direct and uncontradicted evidence, we do not hesitate to say that such an attempt on the part of the plaintiff would in our opinion, have amounted *in law to contributory negligence*, or if the jury should so find, the plaintiff was not entitled to recover. But there is not a single witness who tes-

tifies when or how he got under the cars—whether he attempted to pass between them before they started, or under them while in motion. The junk dealer says, "*in a couple of minutes*" after the plaintiff left the store, he heard a noise, and looking out, saw the car wheel passing over him. It is true, when the witness Mann saw the wheel passing over the plaintiff's leg, the horses attached to the cars had passed Bank street, which runs across Canal street, but the cars extended to Bank street, and although it may be argued from this and other facts, that the plaintiff must have attempted to crawl under the cars while in motion, yet after all, it is but an inference, and being an inference, ought to have been submitted to the jury. We do not, however, intend to discuss the facts in this case. The evidence has been carefully examined and deliberately considered, and we are of opinion that the question of contributory negligence on the part of the plaintiff ought to have been submitted to the jury.

We think the Court erred also in instructing the jury there was *no evidence* of negligence or want of care on the part of the defendant. Canal street, between Fawn and Bank, had been blockaded by the defendant's train of freight cars from between five and six o'clock in the morning until 10—nearly five hours—and evidence was offered to prove that they started suddenly—that no signal, or warning of any kind was given, and that the brakeman was walking leisurely by the side of the train. The public were entitled, in common with the defendant, to the use of this street, and the fact that the defendant had the right to use the railroad track for its freight cars, constitutes no excuse or justification, if the plaintiff was injured by the negligent manner in which this right was exercised. Whether ordinary care on the part of the defendant, having a prudent and considerate regard for the safety of others, entitled to the use of the street,

required that a signal or warning of some kind should be given in moving a freight train, extending nearly a whole square, and which had been standing on the track for more than four hours, or whether the brakeman was in the proper place to stop the cars by the use of the brakes, should it become necessary to do so ; or whether under all the circumstances, the defendant exercised the care and prudence which might reasonably be expected, were questions for the jury to decide. No absolute rule in regard to negligence can be laid down to cover all cases. What would be ordinary care in one case, might be negligence in another, the relative degree of care or want of it, depending upon the circumstances of each particular case. In the record before us there is evidence from which the jury might or might not have found negligence on the part of the defendant, and the Court erred in deciding there was no evidence from which such a deduction could be made.

Assuming then, that the Court ought to have submitted the question of negligence to the jury, the plaintiff's first prayer presented the law in regard thereto, in as favorable a light for the defendant, as it had any right to ask. If the injury resulted directly from the want of ordinary care and prudence on the part of the defendant, and not from the want of such care and prudence on the part of the plaintiff, as ought under all the circumstances to have been reasonably expected, from one of his age and intelligence, or from the want of ordinary care and prudence on the part of his parents, directly contributing to the accident, the plaintiff certainly was entitled to recover. By this instruction the question of negligence not only on the part of the plaintiff, but also on the part of his parents, was submitted to the finding of the jury. It is not necessary to review the many cases in which the degree of care and prudence to be exercised by an infant, has been considered, nor the principles upon

which they have been decided. There is, it is true, some conflict in the decisions on this question, but the weight of authority both in this country and in England, is decidedly in favor of holding a child so far as he is *personally* concerned, only to such degree of care as ought reasonably to be expected among children of his age and intelligence. See cases referred to in *Shearman and Redfield on Negligence,* sec. 49. The rule thus laid down was distinctly recognized by this Court in *Fryer's Case,* 30 *Md.,* 47.

The second prayer ought also to have been granted. If the injury complained of resulted from the want of ordinary care and caution on the part of the defendant, the plaintiff was entitled to recover; provided the jury found that the accident causing the injury could not have been avoided by the exercise of such care and caution by the plaintiff, as ought under all the circumstances, to have been reasonably expected from one of his age and intelligence, or by the exercise of ordinary care and caution on the part of his parents. *Fryer's Case,* 30 *Md.,* 47.

We find no error in the refusal of the plaintiff's third prayer. The facts and circumstances in this case differ widely from *Trainor's Case,* 33 *Md.,* 542, relied on in support of this prayer. In that case the plaintiff was walking on the railroad track, near the viaduct, which crosses the Patapsco river, and by the rules and regulations of the Company, it was the duty of the engine man, on his approach to all bridges, to sound his whistle clearly and distinctly, and to cause the fireman to ring his bell, &c. This Court said, although the plaintiff was guilty of the want of ordinary care and prudence, in walking on the railroad track, yet, if the jury should find that the accident would not have occurred but for the negligence on the part of the defendant in failing to give the usual signals of approach, &c., the plaintiff was entitled to recover. In other words, the negligence of the defendant

under such circumstances, was the *proximate cause* of the injury, and the negligence of the plaintiff was not a concurring and co-operating cause  In this case the proof shows that the plaintiff must have attempted to pass between or under the cars, *just before* or *just after* they started, and if there was negligence on his part in making this attempt in view of all the circumstances surrounding the case, such negligence must necessarily have been a concurrent and co-operating cause of the injury. The rule therefore of proximate and remote cause upon which the prayer in *Trainor's Case* was based, does not apply here.

We concur in the refusal to grant the fourth prayer. There is no evidence from which a jury could find that the failure on the part of the defendant to leave an opening of twenty feet between the cars at or near the centre of the square, was the cause of the plaintiff's injury. On the contrary, the proof shows, as we have before stated, that the plaintiff must have attempted to pass between or under the cars, just before, or just after they started, and even if an opening had been left of twenty feet as required by the city Ordinance, such opening must have been closed by the coupling of the cars, preparatory to the moving of the train. Although the defendant may have been liable to the fine prescribed by the Ordinance for the violation of the same, yet such violation cannot under the facts in this case be said to have caused the injury.

The fifth prayer in regard to the measure of damages, states correctly the rule of law on that subject, and ought to have been granted.

For these reasons the judgment below will be reversed and a new trial awarded.

*Judgment reversed, and*
*new trial awarded.*

(Decided 6th February, 1874.)

STEWART, J., delivered the following opinion :

John T. McMahon, a boy some five years and nine months old, having been run over by the car of the defendant, causing him such injury, as to require the amputation of his leg, brought this action through his next friend for the recovery of damages.

The five prayers offered by the plaintiff were refused and the two submitted by the defendant granted.

The main questions involved are, first, whether there was proof of the defendant's negligence, to be submitted to the jury, and second, whether there was evidence of contributory negligence, on the part of the plaintiff, authorizing the Court to determine thereon, without the intervention of the jury.

The Court below in granting the prayers of the defendant, determined both questions, without reference to the jury, deciding there was a sufficiency of proof of contributory negligence on the part of the plaintiff, but a deficiency of proof of the defendant's negligence. The first prayer of the defendant containing the first proposition, and the second prayer the other.

These two propositions do not stand together—the onus of proof of defendant's negligence, was on the plaintiff, and if none was proved, there was no occasion for the proof of contributory negligence, if at all admissible under such circumstances, because its only legitimate operation is to disentitle the plaintiff to recover, or to excuse or mitigate the defendant's negligence. Besides, where there is any relevant evidence, the decisions are uniform, that the Court will not withdraw its consideration fron the jury—and in regard to contributory negligence of the plaintiff, the Court will only interfere where there is some controlling and conclusive fact proved, leaving no room for intelligent doubt.

We are not prepared to affirm the neglect below upon either proposition.

The rule is established by repeated decisions of this Court, and such is conceded by the appellee's counsel, that the question of negligence is one to be determined by the jury.

The cases are few and exceptional, where the Court will withdraw its consideration from the jury. *B. & O. R. R. vs. Fitzpatrick*, 35 *Md.*, 32 ; *Cumberland & P. R. R. vs. State, use of Fazenbaker*, 37 *Md.*, 156.

The facts and deductions of a case may be plain and free from difficulty ; or obscure and embarrassing.

There is no sound reason why the jury should determine upon their force and effect in the latter, and the Court in the former case.

The adjudged cases, that form the exception to this well settled rule, rest upon clear and undoubted proof of some leading fact, conclusive of the question, and leaving no ground for any different conclusion ; or where the question itself involves some legal proposition.

There was a multiplicity of facts in this case, and much obscurity in the proof, leaving the conclusion to be drawn, difficult, and uncertain. It is not of that character to bring it within any of the exceptions to the general rule.

There was proof as to the age and intelligence of the plaintiff, and as to the conduct of his parents; and the circumstances under which he was found in the street.

It would be unreasonable to hold, as a proposition of law, that he was incapable of such juvenile service, as that required of him by his parents ; or that the plaintiff or his parents were guilty of negligence, in his being on the street on such occasion.

The prayers, on both sides assume that the plaintiff, although a child of tender years, was held to the use of such ordinary care for his safety, as naturally to be expected from one of his age and capacity.

In the re-argument, the question is much discussed by the respective counsel, as to how far the rules requiring

ordinary care, are to be considered modified in such case. The same care is not to be exacted of a youth, as of an adult—the one is accountable for the exercise of ordinary youthful discretion, whilst the other is held to the employment of the more mature intelligence and judgment of the grown up man.

Ordinary care is a relative term, and must vary according to the circumstances of each case, and be construed in connection with the intention of the parties, and, therefore, if the plaintiff be a child, or a person of weak intellect, conduct which, in a grown man of sense, would be regarded as careless or even blamable, may, in his case, be deemed insufficient to warrant a verdict for the defendant. 1 *Taylor's Ev.*, 319.

The conduct of the plaintiff in the case recently decided by this Court, and referred to in the briefs, (*Lewis vs. B. & O. R. R.*,) affords no criterion, as to how similar conduct on the part of a youth might be construed. Neither reason nor authority can hold the inexperienced youth to the exercise of such care, as an adult in possession of his natural faculties—what might be the result of rashness in the one, may, very naturally have proceeded from the simplicity of childishness in the other.

Reasonable allowance must be made for the tenderness of youth, whilst just censure is due to the indiscreet hardihood of the adult.

The proposition cannot be sanctioned by this Court, that the mere fact of a child passing under a standing car, without warning of the danger of its sudden starting, should, as much disentitle him to recover, on the ground of his contributory negligence, or want of ordinary care, as the conduct of an adult attempting to pass over it after being notified that it was liable at any moment to be moved. The man fully warned, boldly takes the hazard, trusting to his strength, whilst the child makes the effort, comparatively unconscious of the danger.

If the plaintiff had sufficient capacity to take care of himself on the street, the law, in deference to the right of others, imposed upon him the reasonable duty of exercising such ordinary care for his own safety, as might naturally be expected from one of his age—that is the standard of care required of him whilst the adult must exercise the ordinary care demanded of his more mature judgment.

If the plaintiff was too young and inexperienced to be left to his own guidance in the street, and ordinary care was not exercised ; the negligence of his parents in thus suffering him to be exposed, without notice to the defendant, will constitute such contributory negligence as excuses the defendant.

Having been found on the street, the rule requiring ordinary care on his part, or that of his parents, applies, and the jury must determine. *State, use of Coughlan & Banon vs. B. & O. R. R.*, 24 *Md.*, 84, 108 ; *State, use of Fryer vs. B. & O. R. R.*, 30 *Md.*, 47.

The facts proved, leave much room for inference, and are difficult of a satisfactory solution.

The evidence as to the manner and time in which the plaintiff got under the cars, is not definite ; and there was no direct proof as to whether they were stationary or moving when he reached them. This was a very important fact in the enquiry. In the absence of such proof of the fact, resort must be had to all the circumstances from which to adduce, if possible, a satisfactory conclusion.

Another material fact involved in doubt was as to the length of time the plaintiff was under the cars.

This could only be determined by reference to all the circumstances, with legitimate deductions therefrom. Was the plaintiff under the cars for some considerable time, either seeking an opportunity to make his escape, or trusting to their passing over him, or was he passing

directly through them when run over? Any conclusion upon the subject must depend upon inference from other facts.

There was evidence that the brakeman called several times to the driver to stop the train, which was not heeded for some time. The brakeman not being sworn, in the absence of his testimony is it or not, a reasonable inference that he discovered the plaintiff, and that there was sufficient time to have prevented the accident, if the cars had been checked by the driver when first called to do so by the brakeman?

The conduct of the plaintiff, whether natural or negligent, must be considered in connection with the surrounding circumstances. If from any fact or fair inference, it was made to appear that he was affected or misled by any previous negligence of the defendant's agents; the propriety of his conduct in reference thereto, may be more or less justified and determined.

The alleged illegal obstruction of the convenient passage of the plaintiff, constraining him to resort to other routes, was one of the series of facts, connected with a just disposition of the case.

The sudden starting of the train, without warning to the plaintiff, was another fact entitled to its due weight.

A child of the plaintiff's age might quite naturally have concluded, from the cars remaining stationary for such length of time, that having disposed of his basket of rags, he might safely pass through or under them, and more rapidly reach his home.

It was the province of the jury to determine, from all the circumstances, how far the management of the train was calculated to deceive and entrap the plaintiff, and to what extent, if any, his conduct was to be qualified thereby.

If the brakeman was not in the proper position to check the speed of the train, or the driver neglected to do

so when called upon, and it was not managed with ordinary care, to have prevented any resulting injury to the plaintiff from his negligence, if that were practicable, its negligence is not to be excused by the plaintiff's want of ordinary care.

If the plaintiff, whilst the defendant's cars were standing or moving, did without ordinary care, place himself in a position of danger, either over or under the cars, or in any other way by his carelessness, render himself liable to accident from the movement of the train ; and such want of care, did not directly contribute to his injury; such conduct did not debar him of his right to recover, if the exercise of ordinary care on its part, would have avoided it, notwithstanding the plaintiff's neglect. *B. & O. R. R. vs. State, use of Trainor,* 33 *Md.,* 554.

There is a mutual obligation to use ordinary care, to avoid the consequences of each others negligence, and therefore, notwithstanding the defendant may have unlawfully obstructed the route of the plaintiff; and suddenly started the cars without due notice, and the brakeman or driver may not have discharged that duty, and been guilty of negligence ; occasioning the injury to the plaintiff, it was not responsible therefor, if the plaintiff by the exercise of ordinary care, could have avoided it. If both parties were guilty of negligence, or remotely to blame, that party whose want of ordinary care, constituted the proximate cause of the injury is to be considered responsible. *N. C. R. R. vs. State, use of Price,* 29 *Md.,* 420.

The age and capacity of the plaintiff, his physical and moral fitness to perform the service required of him by his parents—whether they used ordinary care in sending him through the street on such occasion, and whether he conducted himself with ordinary regard to his own safety, were all legitimate enquiries.

In granting the defendant's second prayer, the Court below decided there was no evidence of the defendant's negligence.

Evidence had been offered, that the defendant in violation of the Ordinance of the City, suffered its train of cars to stand on the track, from Bank to Gough Streets, without any open space between them, from early in the morning until the accident, between 9 and 10 o'clock—conformity to their regulations, would have allowed the plaintiff to pass through the open space, from one side of Canal Street to the other, and not far from a direct line from his home to the store, to which he was sent. The security of those who have to travel the streets, and the cause of humanity, as well as the obligation of law, required the strict observance of this reasonable regulation, whilst its violation, did not *per se*, establish the negligence of the defendant, as directly causing the accident in this case, yet in duly weighing the relative act of the parties, in regard to the immediate occurrence, it was a pertinent enquiry to be considered by the jury, how far such unlawful obstructions may have affected the conduct of the plaintiff. It certainly imposed a strict accountability upon the defendant, and required a higher degree of diligence on its part, to guard against injury to others.

In a populous city, whose streets are crowded with persons of every description, if the defendant failed to apply the usual safeguards, it was guilty of negligence.

If it did not comply with the express Ordinance of the city, in the use of Canal Street, ordinary care on its part, would not be the adequate measure of its obligation for injury inflicted. It incurred responsibility for any accident occasioned by the movement of its trains, unless the injured party by his neglect contributed thereto. *B. & O. R. R. vs. State, use of Miller*, 29 *Md.*, 252. "The doing of an unlawful act, subjects the doer to every consequence which flows from it—a principle of universal

operation, and founded in good sense and public justice.''
*Owings vs. Jones,* 9 *Md.,* 117.

There was also evidence'that no signal was given upon
the starting of the cars

There was no evidence that any examination was made,
to see that the train of cars could be suddenly moved,
without endangering the safety of others. No proof was
offered, that a driver and a single brakeman were all that
was usual and necessary, for the safe management of such
a train. There was proof that when the brakeman called
to the driver to stop, the notice was disregarded for some
time.

The plaintiff's first and second prayers presented the
questions of negligence and ordinary care, in reference
to both parties fairly ; and conceded to the defendant all
that it was legally entitled to ; and that with the plain-
tiff's fifth prayer, modified by omission of reference to
the third and fourth prayers of the plaintiff which were
properly refused, ought to have been granted, and the
defendant's refused.