## Case No. 6,275.

### HAZARD v. CHICAGO, B. & Q. R. CO.

[1 Biss. 503;[1] 2 Chi. Leg. News, 385.]

Circuit Court, N. D. Illinois. Oct. Term, 1865.

PASSENGERS ON FREIGHT TRAINS—DUTY OF RAILROAD COMPANY—DUTY OF TRAVELER.

1. A railroad company when it takes passengers as such on its freight trains, is under the same obligation to carry them safely as if they were on the regular passenger trains, but such travelers acquiesce in the usual incidents and conduct of a freight train managed by prudent and competent men.

[Cited in Ohio & M. R. W. Co. v. Dickerson, 59 Ind. 323.]

2. It is immaterial how many such passengers the company carries, and whether they travel on special permits or regular tickets.

3. A railroad company in the transport of passengers, though not the insurer of their lives, is required to use the utmost skill and diligence in carrying them safely, and to employ all those means peculiar to this mode of transit known to skilful and competent persons; but the passenger must have that care and regard for his own safety and security which devolves on a prudent man under the circumstances.

4. A passenger not rightfully in a certain position cannot complain of the absence of the proper safeguards.

5. Although an accident may have been the result of the negligence of the company's agents, still if a prudent man would not have been where, and as the plaintiff was, he cannot recover.

[Cited in Rosenbaum v. St. Paul & D. R. Co., 38 Minn. 175, 36 N. W. 449.]

6. The effect of a former trial in the state court considered and stated.

The plaintiff [E. W. Hazard], on the 29th of June, 1860, was at Kewanee, a station on defendant's railway, and purchased a passage ticket for Galesburg, where he then resided, and took passage in a freight train, which had, what is termed, a way or caboose car attached. The train consisted of twelve to fifteen cars. The way car was in most respects like a freight car, with doors on each side. It had also a door at each end, and a platform with steps. For this platform there was a railing, but on the rear platform there was no chain or bar extending across, so that there was an open space in the rear and center of the platform. The way car had seats which extended lengthwise at the sides. These freight trains occasionally carried passengers, and the agent who sold the ticket, and the plaintiff when he took the passage, knew the character of the train. The train approached Galesburg about eight o'clock in the evening. Just before its arrival, and while it was yet in motion, at the rate of about three or four miles an hour, the engineer having cut off the steam, the plaintiff being the only passenger in the way car, asked the conductor where the train would stop, and was informed that he, the conductor, did not know. The

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

plaintiff then stated to the conductor and pointed out the part of town in which he lived, and then, according to the account given by the plaintiff, the conductor said, "You had better get off at the next crossing. The train will be running slowly past there, and you can step off on the sidewalk with ease and safety." The statement of the conductor was that he told the plaintiff that business men sometimes jumped off the train at Main street, (the crossing,) and the plaintiff replied he guessed he would get off. The plaintiff then rose from his seat, took his carpet-bag in one hand and a whip and umbrella in the other, and started to the forward part of the car and opened the door. The conductor, who was in the act of closing the side doors, told him not to get out there, but to go to the door in the rear end of the car. The plaintiff then shut the door, and turned towards the other end of the car. As he approached the back door, and when within a few feet of the back door, the engineer took up the slack of the train, by putting on steam. The conductor had closed both the side doors, and was near but behind the plaintiff. The back door was open. At that moment, the way car received a sudden jerk, and the plaintiff was precipitated through the door and the open space already referred to, and was thrown on the ground and seriously injured. The relation given by the conductor was that when he told the plaintiff he had better not get out at the forward door, the plaintiff replied that he guessed the other door would be the safest, and came to the back door, and was in the act of stepping out, his right foot going over the threshold when the jerk came. The plaintiff declared that when he started to go to the rear end of the car his intention was to go on to the platform and to the left hand steps and step down and wait for the crossing, and if the cars were going so slow that he could step off with ease and safety he would have done so, otherwise he would have remained on the cars. The plaintiff soon after his injury brought a suit in the state court against the defendants [the Chicago, Burlington & Quincy Railroad Company],—and obtained a judgment which on appeal to the supreme court was reversed, and the case remanded. The case is reported in 26 Ill. 373. The plaintiff then dismissed his suit and commenced his action in this court.

E. A. Storrs, for plaintiff.
Walker & Dexter, for defendant.

Before DAVIS, Circuit Justice, and DRUMMOND, District Judge.

DAVIS, Circuit Justice (charging jury). We think a railway company, when it takes passengers as such on its freight trains is under the same obligation to carry them safely as if they were on the regular passenger trains—but, of course, the passenger taking the freight train accepts it and travels on it, acquiescing in all the usual incidents and conduct of a freight train managed by prudent and competent men—no more and no less. And we consider it immaterial whether the company carries more or less passengers in its freight trains, and whether or not the passenger travels on a special permit or a regular ticket.

The contract between the parties was, that for a consideration paid by the plaintiff, the defendant agreed to carry him safely from Kewanee to a usual place of stopping at Galesburg, on its freight trains. If there was more than one place of stopping the plaintiff accepted the contract on that condition.

In order to maintain the action, the plaintiff must show that the contract on the part of the defendant has been violated in consequence of some fault or negligence of its employés, or through some defect in the means of transit, and it must appear that his own fault or negligence did not contribute to the injury.

A railway company in the transport of passengers, though not insurers of their lives, is required to use the utmost skill and diligence in carrying them safely, and to employ all those means peculiar to the mode of transit known to skillful and competent persons at the time. But it must be understood that a passenger, while on the train and connected with it, must have that care and regard for his own safety and security which devolves on a prudent man under the circumstances.

There are but two questions in this case which can be regarded as matters of controversy. First. Was the injury to the plaintiff caused by the negligence, want of care or skill on the part of the defendant. Second. Was the plaintiff himself guilty of any fault, negligence or carlessness, which contributed to the injury, and would prevent him from recovering?

Was the conduct of the plaintiff, under all the circumstances of the case, that of a prudent and careful man? He had been told by the conductor that he had better get off there, or that others did get off there. He took his carpet-bag, umbrella and whip, and was in the act of going out of the door, or approaching it, when the car was jerked—the train being in motion at the time, at the rate of three or four miles an hour. And if he acted imprudently or carelessly, did that contribute to the injury complained of? If it did, then the plaintiff cannot recover. It is insisted that the plaintiff's conduct at the time was the result of the direction or suggestion of the conductor. The jury may be satisfied that the plaintiff was leaving the car under the advice or suggestion of the conductor; but if that were given, of his own motion merely, without authority from his principal would it justify a prudent man in alighting from a car when thus in motion? And upon this part of the case it is for the jury to say whether the plaintiff exercised

common prudence in attempting to alight from the car while in motion, and, if not, whether such omission contributed to the injury. Was there any such negligence on the part of the plaintiff that but for it the injury would not have been received?

Was there fault or negligence on the part of the defendant? It is claimed the defendant was guilty of negligence, on two grounds: First. In the act of the engineer causing a violent jerk to the rear car by too suddenly taking up the slack of the train; that is by tightening too quickly the coupling of the cars. Secondly. By the want of a good chain or bar on the center part of the rear platform.

A great deal of testimony has been given as to the necessity of jerking with more or less force the rear car of such a train as the plaintiff was on in this case. On the one side it is claimed it is unavoidable; on the other that by the use of proper caution and skill it can be prevented. In weighing the evidence of this part of the case, the jury should examine it with reference to the kind of train run, and to the skill and prudence which could be applied at the time, as known and practiced by competent agents. If a skillful engineer could, at the time, by the use of proper caution, have avoided giving a jerk to the rear car, then it must be treated as a fault that it was not prevented. But if the jury shall find that some kind of jerk was unavoidable, could the engineer be required to measure and could he be expected to know the exact degree of force which in a long train would be applied to the rear car? The jury should candidly and impartially consider all the evidence bearing on this point, and test the facts by the circumstances shown to exist at the time, and which were known, or ought to have been known, to competent agents.

The proof establishes that there was no guard chain or bar in the center of the rear platform. The same principles are applicable to this point as to the last. It seems to be admitted that as a general thing it was not used on a way or caboose car at the time of the accident. This must also be tested by the degree of skill and prudence required at the time from careful and prudent agents. And the jury should also bear in mind the manifest object of the railing on the platform, viz: the protection of persons when they are rightfully on the platform in getting on or off the car, and if the plaintiff was not rightfully where he was at the time of the jerk, he cannot complain of the absence of the guard chain.

From what has been already said, it will be seen that a party may be guilty of some fault and that may not prevent him from recovering, and we think the case on trial must turn upon this. At the time of the jerk was the plaintiff rightfully where he was, and for the purpose he had in view, and was the jerk the result of negligence on the part of the agents of the defendant? If under the facts and circumstances as you may find they existed at the time, a prudent man would have been where the plaintiff was at the time of the jerk, and the jerk could have been avoided by the exercise of proper skill and caution, then the plaintiff may recover, but on the other hand if you believe a prudent man would not have been where, and as the plaintiff was at the time of the jerk, and for the purpose of alighting from the car, then we think he cannot recover, though the jerk may have been the result of negligence on the part of the defendant's agents.

These are our opinions of the law of the case, treating it as an original case. When the case commenced in the state court, was remanded from the supreme court to the court below for the reason already stated, the plaintiff voluntarily dismissed it, and some time after commenced a suit in this court for the injury sustained.

We have already decided that, as the opinion of the supreme court of the state was founded on the facts as they then appeared, the plaintiff had the right to establish other and different facts concerning the cause of the injury, and, therefore, the plaintiff has been permitted to introduce any evidence in his power having a bearing on the case, and that evidence is before you. There is also in proof the facts which were established on the trial of the cause in the state court, on which the opinion of the supreme court of Illinois was based; and, we think, if you shall find the facts as established here in all material respects the same as proved in the state court, then the opinion of the state court is conclusive against the right of the plaintiff to recover here, otherwise not. Of course, it is of no consequence that the volume of evidence on both sides is much greater than in the state court. The question is whether the cause of action is the same, and the facts, as proved here, are, in all substantial particulars, the same as established in the state court.

The record of the state court is in evidence. It contains the bill of exceptions, the evidence offered in the former trials, and the opinion of the supreme court. It is admissible only for the purpose of showing whether or not the facts as proved there affecting the case are substantially the same as shown in the trial here. We have already stated what the supreme court of Illinois decided. It would not be proper for the jury to consider the opinion of the supreme court, or to discuss its correctness, or the correctness of the views of any one of the judges of the supreme court.

If the jury, under these instructions of the court, should find it necessary to consider the question of damages, the rule would be that the jury should allow to the plaintiff such just and reasonable sum, as compensation for the injury, for the pain and suffering

he has undergone, and the expenses, etc., he has incurred in consequence thereof, as under all these circumstances of the case they think he may fairly be entitled to receive from the defendant.

The jury failed to agree.

NOTE. A recovery may be had though the passenger was not in the usual passenger cars. Philadelphia & R. R. Co. v. Derby, 14 How. [55 U. S.] 468. Edgerton v. New York & H. R. Co., 39 N. Y. 227; Galena & C. U. R. Co. v. Fay, 16 Ill. 568. If a person enters the saloon car of a freight railway train, and, when the train starts, without being requested or directed to leave, remains there as a passenger, contrary to the rules of, but with the knowledge of the conductor, who receives from him the usual fare of a first-class passenger, the railroad company incurs the same liability for his safety as if he were in their passenger train. Dunn v. Grand Trunk Ry., 58 Me. 187. Consult, also, Bridge v. Grand Junction R. Co., 3 Mees. & W. 244; Stokes v. Saltonstall, 13 Pet. [38 U. S.] 181; Galena & C. U. R. Co. v. Jacobs, 20 Ill. 478.

[See Case No. 6,276.]