ALBERT ROSENBAUM *vs.* ST. PAUL & DULUTH RAILROAD COMPANY.

February 8, 1888.

Carrier — Permission by Employe 'to Ride on Construction Train — Authority.—The presumption that one who is permitted by an employe of a railway company to ride upon a construction train is not lawfully thereon may be overcome by special circumstances implying the authority of such employe to grant such privilege.

Same—Risks Assumed by Person Riding— Defective Track.—A person riding on such a train, and over and upon side tracks constructed in the ordinary manner, is deemed to consent to and accept risks incident to such a train and a track of that character; but if, through the neglect of the company to keep such track in suitable repair for the ordinary purposes for which it is constructed and used, an injury occurs to one lawfully upon the train, and without fault on his part, he may recover.

Same—Evidence.—Evidence *held* sufficient to make a case for the jury.

Plaintiff brought this action in the district court for Ramsey county, to recover damages for personal injuries received while in the defendant's employment.    It was admitted that the plaintiff was injured by the derailment of a car in the defendant's construction train, upon which car the plaintiff was riding.    The action was tried before *Brill,* J., and a jury, and plaintiff had a verdict.    Defendant appeals from an order refusing a new trial.

*James Smith, Jr.,* and *O'Brien & O'Brien,* for appellant.

*Propping & Markham,* for respondent.

VANDERBURGH, J.   1. The presumption of law is that persons riding on construction trains, and not employed in actual service thereon or in connection therewith, are not lawfully there, and, if permitted to be there by the employes of the company, the presumption is against their authority to bind the company.    *Waterbury* v. *New York Cent., etc., R. Co.,* 17 Fed. Rep. 671; *Prince* v. *International, etc., Ry. Co.,* 64 Tex. 144.    But this presumption may be overcome by special circumstances; as where, for instance, the company is in the habit of allowing its employes to ride on such trains to and from their work or their homes.    In the case at bar the company was engaged

in repairing its track. Separate companies of men were employed about the work. Some were engaged in loading the cars at the gravel pit; others accompanied the cars, and unloaded the gravel along the track; and others were graders, engaged in ballasting the track. The plaintiff belonged to the third class. The men so employed were all boarded and lodged at the boarding-cars of the defendant stationed on a side track, and they were daily transported on the construction train to and from the boarding-place and their work. And there was a side track near the boarding-cars, about 500 feet long, upon which the construction train, which was made up of flat cars, was run when it came to the boarding-car.

The plaintiff was in the habit of being so carried with others daily. On the day in question when the alleged injury occurred, the train brought plaintiff and others engaged in the same work in the middle of the afternoon to the camp, and they were notified that they were not required to go out again to work that afternoon. He had left his coat at the place where he worked, and he thereupon rode back on a train loaded with gravel to get it, in company with the men who were unloading the cars, and with the consent of the conductor in charge of the train, who knew that he was not there to help unload the cars. The train came up to the camp from the south, when plaintiff got on board to go for his coat, and when it came back to the camp for the day with plaintiff and other employes, it was run over the side track, where the accident complained of occurred.

Under these circumstances, we do not think that the plaintiff ought to be considered a trespasser on the train, or that the defendant owed him no duty in respect to the condition of its track. It was the established practice of the company to transport employes, including the plaintiff, on this train every day. He was still an employe, though not working at that time, and was riding with others engaged in the same general employment. In view of the fact that these employes were all permitted to ride daily, and that the train was under the general direction and management of the conductor, who also had general charge of the work and the men, it should be held to be fairly within his reasonable discretion to allow the plaintiff to ride, under the circumstances of this case. The plaintiff, therefore, having no

knowledge of any rule forbidding the conductor to grant such permission, might presume such authority from the nature of the business, and the manner in which it was conducted. It may be a question whether the instructions of the court in this case were in all respects strictly accurate, but, as no exceptions were taken to the charge, we need not consider such instructions. The defendant's first and second requests were properly refused, because their effect was to take the case from the jury. The court was right in refusing the third and fourth requests, and charging in lieu thereof "that, if the conductor was forbidden to carry passengers upon the train at the time in question, the plaintiff could not recover for the injury, unless the circumstances for which the company was responsible were such as to lead the plaintiff, as a reasonable man, to understand that he had such authority." The question was for the jury, upon the evidence in the case.

2. The negligence complained of was solely in respect to the condition of the side track. The court charged the jury, at the defendant's request, that, if plaintiff knew the manner in which the side track was constructed, he assumed the risk necessarily incident to such construction. In riding on this train, he consented to and accepted all the usual incidents to such a train. He cannot recover for injuries resulting from the condition of the side track, if the same was constructed in the usual way, though the grade was imperfect or uneven, and the track unballasted. But if through failure to spike the rails, or neglect to keep it in suitable repair for the temporary purposes for which it was constructed and used, an injury occurred to one lawfully on the train, without fault on his part, he would be entitled to recover. *Shoemaker* v. *Kingsbury,* 12 Wall. 369; *Hazard* v. *Chicago, B. & Q. R. Co.,* 1 Biss. 503. The defect complained of by the plaintiff arose chiefly from the fact that the rails were not properly spiked to the ties. The evidence on this question was properly received, and the determination of the trial court thereon must be considered as final.

Order affirmed.

A motion for a reargument of this case was denied April 10, 1888.