BRIDGET McDONOUGH *vs.* OVID P. LANPHER *et al.*

Submitted on briefs Nov. 22, 1893. Reversed Dec. 18, 1893.

| 55 | 501 |
| 83 | 160 |
| 54 LRA 485 | |

No. 8401.

**Servant while in the masters Elevator going to or from work is a servant still and not a passenger.**

Defendants carried on their business in a five-story building, using the whole of it. In the building was an elevator, running from the lowest to the highest story, used for freight, but in which the employes in the business were permitted, but not required, to ride in going up to and down from the stories in which they respectively worked. *Held,* that while so riding they were employes, and not passengers, and the degree of care required of defendants was that required on the part of the master towards his servant, and not that imposed on a common carrier of passengers in respect to those carried by him.

Appeal by defendants, Ovid P. Lanpher, Dudley B. Finch, James H. Skinner and Charles W. Williams, from an order of the District Court of Ramsey County, *John W. Willis,* J., made June 19, 1893, denying their motion for a new trial.

The plaintiff, Bridget McDonough, was sixteen years old and in the employ of defendants. In going to her work about eight o'clock in the morning of May 7, 1892, she took the elevator to go up to the fifth story and was injured in the manner stated in the opinion. A guardian *ad litem* was appointed, and she brought this action and obtained a verdict for $1,250. Defendants moved for a new trial, and being denied appeal.

*Kueffner, Fauntleroy & Searles,* for appellants.

The Judge instructed the jury that defendants were bound to exercise the highest skill, foresight and prudence in making the elevator safe for the purpose of transporting human beings from one portion of the building to another. This was erroneous as applied to the plaintiff. She was an employe of defendants engaged on the fifth floor with about seventy-five other girls who were in the habit of using the elevator every morning to go up to their work. The relations between plaintiff and defendants were those of master and servant, and not those of common carrier and passenger. The rule

of ordinary care measured their respective rights and obligations. *Ryan* v. *Cumberland Valley R. Co.*, 23 Pa. St. 384; *Gillshannon* v. *Stony Brook R. Corp.*, 10 Cush. 228; *Russell* v. *Hudson River R. Co.*, 17 N. Y. 134; *Tunney* v. *Midland Ry. Co.*, L. R. 1 C. P. 291; *Seaver* v. *Boston & M. Railroad*, 14 Gray, 466; *O'Brien* v. *Western Steel Co.*, 100 Mo. 182.

Plaintiff's contributory negligence barred her recovery, and the Court should have directed a verdict for defendants. *Ludwig* v. *Pillsbury*, 35 Minn. 256; *Palmer* v. *Harrison*, 57 Mich. 182.

*Chas. H. Taylor*, for respondent.

The mere fact that plaintiff rested her foot upon the strip or brace at the floor of the elevator, even though the heel, unknown to plaintiff, extended beyond the edge of the elevator floor, is not negligence *per se*, especially when she had reason to believe that no danger existed beyond. She was a passenger and not guilty of contributory negligence. *Dahlberg* v. *Minneapolis Street Ry. Co.*, 32 Minn. 404; *Gray* v. *Rochester City & B. R. Co.*, 61 Hun, 212; *Strawbridge* v. *Bradford*, 128 Pa. St. 200; *Laing* v. *Colder*, 8 Pa. St. 479; *Francis* v. *New York S. Co.*, 114 N. Y. 380; *Hulbert* v. *New York C. R. Co.*, 40 N. Y. 145; *Lent* v. *New York C. & H. R. R. Co.*, 120 N. Y. 467.

The proprietor of an elevator used for carrying passengers, is a passenger carrier, and subject to the same responsibilities as to care and diligence to secure safety, as are carriers of passengers by stage coach and railway. *Goodsell* v. *Taylor*, 41 Minn. 207; *Tread-well* v. *Whittier*, 80 Cal. 574; *Strawbridge* v. *Bradford*, 128 Pa. St. 200.

An employe rightfully upon a conveyance of his employer used for carrying passengers, is entitled to all the rights and care of a passenger, unless his being upon it was a necessary part of his employment, or contemplated from the very nature of his contract of service. *State* v. *Western Maryland R. Co.*, 63 Md. 433; *Ryan* v. *Chicago & N. W. Ry. Co.*, 60 Ill. 171; *Ohio & Mississippi Ry. Co.* v. *Muhling*, 30 Ill. 9; *Washburn* v. *Nashville & C. Ry. Co.*, 3 Head, 638; *Prince* v. *International & Gr. N. R. Co.*, 64 Tex. 144; *Woolery*

v. *Louisville, N. A. & C. Ry. Co.*, 107 Ind. 381; *Gillenwater* v. *Madison, &c., Ry. Co.*, 5 Ind. 340; *Fitzpatrick* v. *New Albany, &c., Ry. Co.*, 7 Ind. 436.

GILFILLAN, C. J. The action is to recover for a personal injury. The defendants were engaged in business as wholesale dealers in hats, caps, furs, gloves, etc., and manufacturing and repairing furs and fur garments, carrying on the business in a five-story building on Fourth street, St. Paul. In the building was an elevator, running from the lowest to the highest story. The elevator was not inclosed with anything in the nature of wainscoting or boarding, but consisted of a platform or floor, with posts at the corners, and an intermediate post on each side extending up to the framework at the top. About three feet above the floor was a narrow strip of board on the sides, nailed to the posts, and another about three inches high from the edge of the platform. The plaintiff was working for defendants, and was employed with seventy-five or a hundred others in the fur department of the business, the work of which was done in the fifth story. The elevator was used for carrying freight, and the employes were permitted, especially when arriving in the morning and when quitting at night, but were not required, to ride up and down in it, to and from the stories where they worked. There were stairs which they could use if they chose. On arriving at the building one morning, plaintiff took the elevator to ride up to the fifth story, and on entering it she rested her hand on the upper strip and one foot on the lower, and in ascending, the foot, which must have been in part outside the strip, was caught and injured by a joist or timber in one of the floors projecting inside the wall or casing of the elevator well or shaft so as to come very near the edge of the elevator floor.

On the trial plaintiff had a verdict, and the appeal is from an order denying a new trial.

The appellants make several assignments of error, only one of which it is necessary to consider.

The court instructed the jury: "If you find that this elevator described in the testimony was used, with their knowledge and consent, as a passenger elevator, in that case the defendants were bound to the exercise of the highest human skill, foresight, and

prudence in making the elevator safe for the purpose of transport-
ing human beings from one portion of the building to another. So
much for the obligation resting on the defendants in case you find
this to have been a passenger elevator."

That is the degree of care required of a common carrier of pas-
sengers towards the passengers he carries. It is a higher degree
than is required of a master towards his servant. That degree
is stated in Cooley on Torts (page 567) thus: "The law does not
require him to guaranty the prudence, skill or fidelity of those from
whom he obtains his tools or machinery, or the strength or fitness
of the materials they make use of. If he employs such reasonable
care and prudence in selecting or ordering what he requires in his
business as every prudent man is expected to employ in providing
himself with the conveniences of his occupation, that is all that
can be required of him." See *Gates* v. *Southern Minn. Ry. Co.*, 28
Minn. 110, (9 N. W. 579.)

The rules are general, and from considerations of convenience and
public policy there are no exceptions. There are sound reasons for
requiring a higher degree of care in one case than in the other.
An obvious one is, that in the case of the passenger, he neither does
know nor can know, nor is he called on to inform himself, whether
the carrier employs competent and careful servants and fit and
proper machinery and means for performing the service, but he
commits himself unreservedly to the care of the carrier; while the
servant in most cases may know, and, if the matter is open to ordi-
nary observation, is bound to know, whether the machinery and ap-
pliances employed by the master be fit and proper.

As there cannot be two rules as to cases between master and
servant, one applying to the use of one kind of machinery and an-
other to another kind, it is evident that if the relation between
plaintiff and defendants at the time of the injury was only that
of master and servant, the instruction was wrong. We suspect
the court below was misled by some indefiniteness in the opinion in
*Goodsell* v. *Taylor*, 41 Minn. 207, (42 N. W. 873,) which was not a
case of master and servant, but of innkeeper and guest; and it was
said: "The relation between the owner and manager of an elevator
for passengers is similar to that between an ordinary common car-
rier of passengers and those carried by him." That would not be

applicable where a relation requiring a different degree of care exists, and the person is riding and being carried in that relation.

The question comes, then, to this: Was plaintiff, in riding in the elevator from the lower to the fifth story of the building, doing so as the defendants' servant, or was she riding as a passenger, being carried by them as a common carrier?

We find no case precisely similar in which that question was distinctly passed on. *Treadwell* v. *Whittier,* ᴧ0 Cal. 574, (22 Pac. 266,) was not a case of an employe, but of a customer, riding in an elevator. It was therefore not unlike *Goodsell* v. *Taylor,* and the rule expressed in the latter case was applied. *Wise* v. *Ackerman,* 76 Md. 375, (25 Atl. 424,) was the case of an employe, and the court, treating the plaintiff as in the elevator as an employe, and not as a passenger, stated the rule: "But an elevator is in many respects a dangerous machine, and, though it may be primarily intended only as a freight elevator, yet, if the employes, in the course of their employment, are authorized or directed to use the elevator as a means of personal transportation, the employer controlling the operation of the elevator is required to exercise great care and caution, both in the construction and operation of the machine, so as to render it as free from danger as careful foresight and precaution may reasonably dictate." This is considerably short of the degree of care required of a common carrier of passengers, and stated in the instruction of the court below,—"the exercise of the highest human skill, foresight, and prudence." It is but the expression, in different terms, of the degree required of a master towards his servant; for an ordinarily prudent man employing a dangerous machine where human life is risked will exercise great care and caution in respect to its construction and operation.

The only cases nearly analogous in which the question whether the person injured was a passenger or employe was passed on were cases where a railroad company was accustomed to carry their employes, without charge, to and fro between the place where they lived or boarded and the place where they worked for the company, and one of them was injured while riding to and from the place of work.

Of these cases *Gillenwater* v. *Madison, &c., R. Co.,* 5 Ind. 339, holds that the person so carried was a passenger. *Fitzpatrick* v. *New Al-*

*bany, &c., R. Co.,* 7 Ind. 436, cited by respondent to the same point, does not so hold; the court saying: "He was not, it is true, a mere passenger. His travel on the cars was an incident to the business in which he was employed; but under an agreement with the defendants he was to be regularly conveyed to and from his work. This, it seems to us, is an implied engagement that they would convey him as safely and securely as if he really had been a passenger in the ordinary sense of the term." So far as that may mean that, though the person injured was not a passenger, but an employe at the time, there was such implied agreement, or any obligation of care other than that imposed by law upon a master towards his servant, the case stands alone; and we think the grounds on which the court made that remark were overruled in *Columbus, etc., R. Co.* v. *Arnold,* 31 Ind. 174. *State* v. *Western Maryland R. Co.,* 63 Md. 433, is an instructive case. The person killed was employed by the company as brakeman on a passenger train running in the morning from U. B. to B. C., and returning in the evening, every day, except Sundays. On arriving at U. B. Saturday nights, the time was his own until Monday morning, when he was expected to be at U. B. to resume his duties. Sunday he took a train at U. B. to go to B. C., where his family resided, traveling on a pass which the conductor of his train held for himself and crew, and on that trip the decedent was killed in a collision. It did not appear that by the terms of his employment he was to be carried Saturday evening or Sunday from U. B. to B. C., and back again for Monday morning. The court reviewed most of the decisions to that time, and held the decedent was a passenger when killed, and said: "In whatever else they may differ, these cases all agree upon one principle, and that is that if the plaintiff is not, at the time of the accident, engaged in the actual service of the company, or in some way connected with such service, the company is liable for the negligence of its employes." *O'Donnell* v. *Allegheny V. Ry. Co.,* 59 Pa. St. 239, held that a carpenter who was to be carried to and from his place of work was, while being so carried, a passenger.

On the other hand, holding that in cases of the kind the person is carried as an employe, and not as a passenger, are *Tunney* v. *Midland Ry. Co.,* L. R. 1 C. P. 291; *Gillshannon* v. *Stony Brook R. Co.,* 10 Cush. 228; *Seaver* v. *Boston & Maine R. Co.,* 14 Gray, 466; *Russell*

v. *Hudson River R. Co.*, 17 N. Y. 134; *Ryan* v. *Cumberland V. R. Co.*, 23 Pa. St. 384; and *Kansas Pacific R. Co.* v. *Salmon*, 11 Kan. 83. *Rosenbaum* v. *St. Paul & Duluth R. Co.*, 38 Minn. 173, (36 N. W. 447,) is really to the same effect. The company transported the employes daily from the boarding car to their place of work and back again. The plaintiff, having returned to the boarding car, found he had left his coat at the place of work, got upon a gravel train to go back and get it, and while on it was injured. If he got on the car as a passenger, he was a trespasser, for the conductor had no authority to take passengers; but if he got on as an employe he was not, and the court held he was on the train as an employe.

There is, therefore, a considerable weight of authority in support of the proposition that in such cases the person is carried as an employe, and not as a passenger.

And in a case like this reason would seem to point to the same result. State the matter to one not used to making hair-drawn distinctions but to judging by the dictates of business common sense, and we do not think he would hesitate in arriving at that result.

In our opinion, from the time plaintiff entered the building for the purpose of going to work she was there as an employe, whether she walked up the stairs or rode up in the elevator.

Order reversed.

(Opinion published 57 N. W. Rep. 152.)