Grew, J..
By the record in this case, but two questions are presented to this Court for determination, and these are: 1. Did the trial court err in refusing to give to the jury the special instruction requested by plaintiff in error? 2. Was the charge- as given by the court erroneous?
The only evidence adduced at the trial of this case in the court of common pleas was that offered on behalf of the plaintiff, and the whole of the evidence so offered is set out in a bill of exceptions that is made *94 a part of the record in this case. There was little or no conflict in the testimony of the several witnesses, and the testimony offered tended to prove, if it did not establish the fact, that after the east-bound Market street car had reached the transfer station in the public square, and before Mrs. Little attempted to get. aboard of said car, there had been a change of conductors and motormen, and that at the time of the accident — at the time Mrs. Little was injured — that John McGuff was then the conductor on, and was in charge of, said east-bound Market street car No. 3G, and that Isaac Smalley was then motorman on said car.
John McGuff testified as follows: “Q. Whose duty was it, or who had charge of the car from the’ time it arrived at the station? . A. When it arrived there I was supposed to have charge of it — to take it there. Q._ You? A. Yes, sir. Q. You had taken your place, had you? A. Yes, sir. Q. You were, as you supposed, all ready to move out for the east? A. Yes, sir. Q. Your motorman was in his place? A. Yes, sir. Q. How long had you been in your place or had the car been standing there before you took your position? A. About a minute and a half. Q. And you had been in your place for this time? A. Yes, sir. Q. You had taken your, place and your motorman had taken his? A. Yes, sir. Q. And that car was in your charge with Smalley- as the motorman of that car? A. Yes, sir.”
Isaac Smalley on his examination in chief testified as follows: “Q. Where do you live? A. 1015 Hughes Avenue. Q. What was your business or employment in the month of October, 1899? A. I was a motorman on the Lima street railway. Q. On the evening of October 31st, were you in charge of any *95 car as a motorman? A. Yes, sir. Q. What was. the number of that car? A. Car 36. Q. Which way was it headed? A. It was going east on Market street. Q. Where did you take charge of that car? A. At the transfer station. Q. Here in the public square? A. Yes, sir. Q. State, if you know, where is the usual place that passengers transfer from Main street to Market street? A. At the transfer station. Q. Do you know how long that car had stood there or did stand there before it moved out? A. Well, not over two minutes, I don’t think; of course I didn’t time it; I could not say positively, but I don’t think over two minutes. Q. You took charge of it at that place? A. Yes, sir. Q. Who was your conductor that went on duty with you? A. John McGuff.” And on his cross-examination as follows: * * * “Q. You had not been on the car coming down Market street? A. No, sir. Q. You changed crews, I believe, at the transfer station? A. Yes, sir. Q. Your crew consisted of yourself and McGuff? A. Yes, sir. Q. What crew had brougbt the car to the transfer station? A. Why motorman O’Malley and conductor Cordrey. Q. You had relieved O’Malley? A. Yes, sir. Q. And McGuff had relieved Cordrey? A. I supposed he had, of course I did not know. Q. That is the point that McGuff takes Cordrey’s place? A. Yes, sir, and I supposed he relieved him, he was in charge of the car; of course he was supposed to relieve him but I did not know whether he had relieved him or not. Q. Cordrey lives somewhere in the eastern part of the town?' A. He gets off at Scott street, there at the hospital, I do not know where he lives, whether he lives on that street or not, but he got off there and went up that *96 street. Q. This was the regular time for the transfer of crews? A. Yes, sir.”
At the conclusion of the testimony and after the arguments the railway company by its counsel requested the court to give to the jury the following instruction : “If at the time plaintiff undertook to <get on the car, McGuff, as conductor, and Smalley, as motorman, had absolute charge of the car, No. 36, and so continued up and until the accident ■occurred, the company would not be responsible for the act of Cordrey, former conductor, if his trip and duties had ended upon the stoppage of the car, No. 36, at its arrival at the transfer station in the center of the square at a time prior to the injury.”
This instruction the court refused to give; the defendant, by its counsel, at the time excepted, and such refusal by the court to so charge is one of the matters ■ now assigned here as error. It is clear from the evidence in this case, that the instruction so requested by defendant was not a mere abstraction, but that the same was pertinent and applicable to a condition of facts which the evidence in the case at least tended to prove or establish, and if in its terms and language such request embodies and contains a correct statement of the rule of law governing defendant’s liability, if the facts and conditions therein assumed and stated were found by the jury to exist, then such request should have been given and the refusal to give it was error.
Therefore, in considering the question of whether or not the instruction requested was a: proper instruction, and one that should have been given by the court to the jury, it is important primarily, to determine whether if the facts and conditions assumed by said request, were by the evidence shown to exist, the rule *97 of respondeat superior would then under such circumstances obtain or apply and the railway company be held liable for the act of Cordrey. In Railroad Company v. Wetmore, 19 Ohio St., 110, in discussing the doctrine of a master’s liability for the wrongful acts of his servant, the Court on page 131 says:
“The general rule as to the liability of the master for the wrongful acts of his servant Is thus stated by Mr. Smith in his work on Master and Servant: ‘A master is ordinarily liable to answer in a civil suit, for the tortious or wrongful acts of his servant, if those acts are done in the course of his employment in his master’s service. The maxims applicable to such cases being respondeat superior, and that before alluded to, qui faoit per alium faeit per se. This rule, with some few exceptions, which will herafter be pointed out, is of universal application; whether the act of the servant be one of omission or commission, whether negligent, fraudulent, or deceitful, or even if it be an act of positive malfeasance or misconduct, if it be done in the course of his employment, his master is responsible for it civiliter to third persons. Smith’s M. & S., s. p. 151.
“But, to make the master responsible, the act of the servant must be done in the course of his employment, that is, under the express or implied authority of the master. Beyond the scope of his employment, the servant is as much a stranger to his master as any third person, and the act of the servant not done in the execution of the service for which he was engaged cannot be regarded as the act of the master. Ib., s. p., 160; Shear. & Redf. on Neg., sections 59, 62; Limpus v. Omnibus Co., 1 Hurl. & Colt., 541; Poulton v. Railway Co., L. R., 2 Q. B., 535.”
In the case of Morier v. Railway Co., 31 Minn., *98 351, Mitchell, Judge, in the course of his opinion says: “Beyond the scope of his employment the servant is as much a stranger to his master as any third person. The master is only responsible so long as the servant can be said to be doing the act, in the doing of which he is guilty of negligence, in the course of his employment. * * * And in determining whether a particular act is done in the course of the servant’s employment, it is proper first to inquire whether the servant was at the time engaged in serving his master. If the act be done while the servant is at liberty from the service and pursuing his own ends exclusively, the master is not responsible. If the servant was at the time when the injury was inflicted, acting for himself and as his own master, pro tempore, the master is not liable. If the servant step aside from his master’s business for however short a time to do an act not connected with such business, the relation of master and servant is for the time suspended. Such, variously expressed, is the uniform doctrine laid down by all the authorities.” This rule or condition of liability while apparently simple and easy of comprehension is sometimes found difficult of application, but the difficulty in each particular case arises not from any uncertainty as to the rule itself, but in ascertaining whether the act complained of was one done in the execution of the masters business and within the scope of the servant’s employment. This fact once established, the rule which determines the liability or nonliability of the master Is easily applied, but the rule itself can in nowise aid in determining the question whether such act was or was not so done.
In determining whether a particular act was done in the course or within the scope of the agent’s em *99 ployment two things are always to be primarily considered.
First — Was the agent engaged at the time in serving his principal?
Second-Even though so engaged, was the act complained of within the scope of the agent’s employment?
The cases dealing with the subject have generally to do with one or the other of these questions, and can generally be classified under these two heads.
“If the act is done while the servant is at liberty from service, and pursuing his own ends exclusively, there can be no question of the master’s freedom from all responsibility, even though the injury complained of could not have been committed without the facilities afforded to the servant by his relation to the master.” 1 Shear. & Eedf. on Neg., section 147.
In Hutchinson v. Railway Co., 5 Exch., 343, the court say: “We do not think a master is exempt from responsibility to his servant for an injury occasioned to him by the act of another servant, where the servant injured was not at the time of the injury in the service of his master. In such a case the servant injured is substantially a stranger and entitled to all the privileges he would have had if he had not been a servant.”
In the case of Railroad Co. v. Trainor, 33 Md., 542, Trainer was employed and paid by the day. .It six o’clock, P. M., his day’s work was ended, and on a day that he had been at work, but had finished his day’s work and was on his way home, the injury^ occurred. He had expected to resume his work the next morning. The court held that at the time of the injury he could not be considered in the employment of the company. In commenting on this case in Abell *100 v. Railroad Co., 63 Md., 433, tlie court say : “The decision in Trainer’s case proceeds upon the assumption that at the time of the injury he was not acting in the service of the company. His day’s labor was over for the day and although he expected to resume labor the next day, that when his day’s work was over he occupied toward the company the position of a stranger and was entitled to all the privileges he would have had if he had not been an employe.” In the case last cited, Abell, an employe of the railroad company, while off duty for the day, was going to his home on a free pass on a train of his employer, expecting to return to his labor the next morning, and was killed by a collision caused by the negligence of the employes of the company. In an action for damages brought by the wife of the deceased the court held: “That Abell at the time of the collision was not acting in the service of the company, but was substantially a stranger and entitled to all the privileges he would have had if he had not been an employe.”
In the cases just cited the principle upon which the master was held to be liable to-wit: that the servant injured was not at the time of the injury in the service of the master, would, when applied to this case, and for like reason, exempt the master from liability, if the facts assumed in the request to charge were, by the evidence, shown to exist. The test of a master’s liability is not whether a given act was done during ■.the existence of the servant’s employment, but whether such act was done by the servant while engaged in the service of, and while acting for the master in the prosecution of the master’s business, and such is the rule whether the act complained of be wanton and willful or whether it be merely negligent on the part of the servant or employe. In whatever *101 else they may differ the authorities agree upon the principle that an employer is not liable for the acts of an employe, unless committed while engaged in the service or duties -of his employment. The question presented by the instruction that was asked by plaintiff in error is not whether what was done by Cordrey was such an act as would have been within the course and scope of his employment and duties if he had then been on duty as conductor with the right to control and direct the movements of said car, but is, quoting from the request,, “if his trip and duties had ended, and McGuff, as conductor, and Smalley, as motorman, had absolute charge of said car No. 36 and so continued in charge up and until the accident occurred,” whether under such circumstances the railway company would be liable for the unauthorized act of Cordrey in causing said car to be started in the manner he did. While the rule is well established that the master will not be exempt from liability merely because the act of a servant was in disregard of a rule laid down by the master, or was in disobedience of his express command, yet on the other hand it is equally well settled that to make the master responsible for the act of a servant or employe such act must be done by such servant or employe while engaged in the service and duties of his employment, and in the prosecution of his master’s business. The fact that Cordrey worked daily for said company and was, in a popular sense, its employe, could not operate to make the railway company liable at all times and under all circumstances for his negligent conduct. Whether the company is so liable in a given case is made to depend upon actual service within the scope of his employment. A master has the right to select and choose his agents and-to determine himself, and *102 assign to the servants so selected, their respective duties, and no assumption by an employe of duties not assigned to him will bring those duties within the course or scope of his employment as defined by thé master, and when an act is not Avithin the scope of a servant’s employment it cannot be within either the express or implied authorization of the master.
If, as assumed by the instruction requested by plaintiff in error at the time the accident complained of occurred, McGuff Avas then the conductor in absolute charge and control of said car, and Cordrey’s trip and duties as conductor thereon had ended, then, and in thaUevent, Cordrey having no longer any duty to perform in or about that car and it being no longer any part of his duty under his employment to be or remain on said car, his act (the ringing of the bell as a signal to start), was an unauthorized assumption of authority, not within the line of his duty or the scope of his employment, and thé railway company would not be responsible therefor.- The instruction asked by plaintiff in error was,, we think, a proper instruction and should have been given.
On the trial of this cause in 'the general charge, the court instructed the-jury in part as follows: “And if you find from the evidence that at the time plaintiff undertook to board this car, if you find she did, that • the negligent act, if there was one, that caused her injury — if she suffered any — was done by a servant and agent of the defendant then present, and the act that he did was a part of the ordinary duties of his employment, then, and in that case, it would make no difference whether or not the exact time of the performance of his duty, under the rules he was acting under, had expired or not. If the act that he did was a. part of his usual duty as an employe of that com *103 pany, that company is still liable for the negligence in the performance of those acts. So that ‘if you find that the car of the defendant mentioned in the petition and evidence came from the west to the transfer station in the charge of John Cordrey, as conductor; and you further find that he remained aboard of such car and did any act that he would naturally be called upon to do while discharging his duty as a conductor, such act would be within the scope, and course of his employment; and if such act was negligently performed, thereby causing injury to plaintiff while she was attempting to get aboard said car as a passenger, and she was free from any negligence contributing thereto, then the defendant would be liable/ ”
To this instruction the defendant, the railway company, excepted and the giving of the same is here assigned as error. Much of what we have heretofore said on the question of the refusal of the court to charge as requested by plaintiff in érror applies with equal force to this charge as given.
This charge in effect, is an instruction to the jury that although at the time of the act complained of Cordrey may have been off duty and not then engaged in the actual service or duties of his employment as conductor, and not then clothed with present authority to perform the act in question, yet, if what he did- was a part of his usual and ordinary duties when actually serving the company, then such act would, if negligent, involve the railway company in its consequences and would make it liable to Mrs. Little for any injury ■ to her resulting therefrom. From the language employed in this instruction the jury may very well have understood, in the light of the undisputed facts in this case, that in determining the question of the defendant’s liability, they need *104 inquire no further than to ascertain whether the act of Cordrey was such act “as he would naturally be called upon to do while discharging his duty as conductor.” If they should find it was, they were by this-instruction, in effect, told that such act would bind the company and make it liable although Cordrey’sduties and services for the day were ended, and the-relation of master and servant for the time was terminated. Such instruction was, we think, under the facts of this case, misleading and erroneous. As to what was done by Cordrey, there was in the evidenee in this case, no conflict or controversy whatever, but the capacity in which he did what was done, whether acting for himself or as the servant of the company, as well as his authority to so act, were in dispute, and it became and was important to know in this case whether at the time Cordrey rang the bell which caused the car to be started, he was then acting in the service of the company — within the course and scope of his employment — or was acting outside of it to effect some purpose of his own; and these'were not questions of law for the court, but were questions of fact to be submitted to and determined by the jury from a consideration of all the facts and circumstances proven in the case. But the jury were told,, in substance, that it was a matter of no consequence whether Cordrey’s duties had ended, and his service- and employment for the day had terminated, that “if the act that he did was a part of his usual duty as an employe of that company, that company is still liable for the negligence in the performance of such act,” because within the course and scope of his employment. But the act of Cordrey, in legal contemplation, was not within the course of his employment and the scope of his authority and duties, unless at the *105 time of its commission he was acting in the service of the company and about the company’s business, and whether he was so employed and acting at the time Mrs. Little was injured, should have been submitted to the jury with instruction that if they should find he was not, then the railway company would not be responsible and could not be held liable for his unauthorized act. In this case the court said to the jury, that whether at the time of the act complained of he was then so employed and acting made no difference, and this we think was error.
The judgment of the circuit court and of the court of common pleas reversed, and cause remanded to the court of common pleas.
Btjrket, C. J., Spear, Davis and Shatjck, JJ., con-
Price, J., not participating.