# THE BALTIMORE AND POTOMAC RAILROAD COMPANY

## *v.*

## CUMBERLAND.

---

Practice; Questions for Jury; Municipal Regulations; In-fants; Contributory Negligence; Reversible Error; Variance.

1. Where in a suit to recover damages for personal injuries against a railroad company, it is claimed by the plaintiff that the defendant failed to fence in its tracks as required by a city ordinance providing that when the grade of tracks are even with the adjoining surface they shall be fenced in, and the defendant claims that its tracks at the point where the accident occurred were about eighteen inches above an adjacent curb, which was eight inches above the surface of the street, and therefore no fence was required, it is a question of fact for the jury, whether the grade of the railroad at the point in

question was approximately even with the adjoining surface, so as to preclude the necessity of enclosing the tracks by a fence.

2. And whether, in such a case, a light displayed on the advancing end of the defendant's train of cars, was such a light as was required by a municipal ordinance, is also a question for the jury.

3. In determining whether a child has been guilty of contributory negligence, he is not to be held to the same degree of care and prudence as would be required of an adult under the same circumstances, but the caution required of him is according to his maturity and capacity.

4. The granting of an instruction which is faulty in construction, and which may have been to some extent misleading, will not be held to be reversible error, when the court in its charge explained it so clearly and amply as to leave no doubt of its meaning.

5. Where in a suit to recover damages for personal injuries against a railroad company the declaration alleges "there was no light on the rear part of said engine to indicate its approach," and the proof shows there was a light, but it is questionable whether it was sufficient to give a proper warning to pedestrians, there is no variance.

No. 778.  Submitted April 15, 1898.  Decided May 3, 1898.

HEARING on an appeal by the defendant from a judgment on verdict in an action to recover damages for personal injuries.  *Affirmed.*

The COURT in its opinion stated the case as follows:

The appellee, Charles E. Cumberland, a boy a little over twelve years of age at the time of the accident which gave occasion for this suit, was injured on the railroad track of the appellant, the Baltimore and Potomac Railroad Company, on December 10, 1894, by being knocked down and run over by an engine and tender of the company drawing a train of cars on Maryland avenue, in the city of Washington.  The train had come across the Long Bridge from Virginia, and was being moved northeastwardly along Maryland avenue towards the station a few minutes after five o'clock in the afternoon of the day mentioned.  It was what is known as a work train, carrying materials and laborers in the employment of the company.  The engine and ten-

der drawing the train were reversed, so that the tender was in advance of the engine, and the head of the engine was turned towards the train which it was drawing. It was a rainy, misty evening; and it was after dark, or at least getting so dark that the engineer of the engine, as he testified in the suit, was unable to distinguish objects fifty feet ahead of him. The headlight of the engine, being turned backwards toward the train, was of course invisible to the front of it; but hanging on the tender and intended as a signal was a hand lamp, such as is frequently used by the trainmen on the rear of trains and in and around the stations. As usual in such cases, the witnesses differ greatly as to the speed at which the train was moving, one witness testifying that it was at the rate of about six miles an hour, and another witness that the rate was from twelve to fifteen miles an hour.

The father of the young plaintiff, who appears in the suit as his next friend, was a lamplighter in the service of the District government, and was employed to light the gas lamps on the streets of the locality in which the accident occurred. Being incapacitated to some extent by defective or failing eyesight, he employed the boy to help him in the performance of his duties; and the boy had been so employed for about a year before the occurrence of the accident. About five o'clock of the afternoon or evening mentioned, the boy had lit the gas lamp about the middle of the block on the south side of Maryland avenue, between Thirteen-and-a-half and Fourteenth streets; and thereupon proceeded directly across the avenue, as it seems he had been in the habit of doing, to light the corresponding lamp on the north side of the avenue, carrying on his shoulders a ladder which he used for the purpose.

At this part of the avenue there are four or five, or perhaps six, railroad tracks—two main tracks on the north side, used for passenger trains; a third to the south of these two, used for freight trains, and which was the one on which

the accident occurred; south of that a track diverging east-wardly into the freight station of the Richmond and Dan-ville Railroad Company to the south of the avenue; and still further south, and south even of the gas lamp which the boy had lit, a switch diverging from the east into a pri-vate coal yard.   And it may be added that about the place of the accident, and thence westward towards Fourteenth street, the tracks begin to curve so as to reach the Long Bridge at the foot of that street, beyond the inner side of this curve, and about the line of Fourteenth street, there is a switchman's box, which to some slight extent obstructs the view from the east of trains coming to the avenue from the bridge.

As the boy had passed or was passing the Richmond and Danville track, and was approaching the freight track, his attention was directed to a passenger train going out on the northernmost track towards the bridge.   When this had passed he proceeded on his way across, and having stepped on the freight track, he was struck, knocked down, and injured by the tender attached to an engine drawing the work train, which was coming east, and which he states that he had not seen, although he testifies that he had looked in that direction, and had listened for approaching trains, and had neither seen nor heard any.   He was taken out from under the engine and taken to the hospital, his injuries resulting in the loss of his arm, which was ampu-tated at the hospital.   At the time of the accident there seems to have been considerable noise and confusion on the street, caused by the return of numerous vehicles from the races which were taking place at the time in Virginia, beyond the Long Bridge; and there was considerable con-trariety in the testimony as to the shouts claimed to have been made to warn the boy of his danger.   And there is also considerable contrariety in the testimony with refer-ence to the distance to which the boy could see or be seen, in consequence of the mist and darkness.

At the trial of the case in the court below the testimony on both sides seems to have been adduced without much controversy as to its admissibility; and no question is presented to us in that regard. But there were introduced in evidence certain regulations made by the Commissioners of the District of Columbia, under authority of law, the reasonableness of which is not questioned, but of which the application is greatly brought in question. These regulations are the following:

"Whenever the grade of a steam railroad track is approximately even with the adjacent surface, the line of the road shall be securely closed on both sides with a substantial fence, and all grade crossings or intersection of any steam railroad tracks with streets or avenues shall be securely guarded by a suitable gate or guard, erected and maintained by the company owning or operating such track."

"Between sunset and sunrise of each day, a headlight, or other equivalent reflecting lantern, to give due warning to persons near or crossing steam railroad tracks of the approach of trains, locomotives or cars, shall be displayed upon the advancing end of every train of steam railroad cars, and of single steam railroad cars and locomotives not in trains, when moving in the District of Columbia. It shall be unlawful for any person to set in motion, or run or operate any train of railroad cars, single railroad cars or locomotives without the said display of such lights or lanterns."

"Steam cars, trains or engines shall not move upon any street or avenue at a greater rate of speed than twelve miles an hour, and no steam car, train or engine shall be stopped or held at a street crossing or intersection so as to obstruct the passage of vehicles or foot passengers for a longer period than is needed for the passage of such steam car, train or engine at a speed of not less than five miles an hour."

These regulations or ordinances were in force at the time

of the occurrence of the accident which gave rise to this suit; and two of the three are insisted upon by the plaintiff as entering into the question of the defendant's alleged negligence. The third, however—that in reference to the rate of speed—seems to have been abandoned by the plaintiff in view of the insufficiency of the testimony adduced to show a violation of its provisions.

Upon the conclusion of the testimony, the whole of which is substantially set forth in the record, the defendant requested the court, upon the whole evidence, peremptorily to instruct the jury to return a verdict for the defendant; which request was refused, and the refusal is made the basis of one of the assignments of error before us.

Other requests for instructions were then presented by both sides; two on behalf of the plaintiff, which were granted, and seven on behalf of the defendant, three of which were granted and four refused. Error is assigned only on the allowance of the two instructions requested by the plaintiff and on the refusal of two of the rejected instructions requested on behalf of the defendant, all of which will be noticed in their order.

The case was submitted to the jury; and there was a verdict for the plaintiff in the sum of $8,000, upon which there was judgment. From this judgment the defendant has prosecuted the present appeal.

*Mr. Enoch Totten* and *Mr. J. S. Flannery* for the appellant:

The plaintiff in this case was *sui juris*, and the court should have so held, as matter of law, instead of leaving the question of his capacity to be determined by the jury as matter of fact. The caution required is according to the maturity and capacity of the child, and this is to be determined in each case by the circumstances of that case. *Railroad Co.* v. *Gladmon*, 15 Wall. 401; *Railroad Co.* v. *Stout*, 17 Wall. 660; *Nagle* v. *Railroad Co.*, 88 Pa. St. 35.

In the following cases, children ranging from six to four-

teen years of age have been held, as matter of law, guilty of negligence *per se* and contributory negligence: *McMahon* v. *Railroad Co.*, 39 Md. 449; *Meeks* v. *Railroad Co.*, 52 Cal. 602; *Gillespie* v. *McGowan*, 100 Pa. St. 144; *Wendell* v. *Railroad Co.*, 91 N. Y. 421; *Brown* v. *Railway Co.*, 58 Me. 384; *Messenger* v. *Dennie*, 137 Mass. 197, also 141 Mass. 335; *Pakalinsky* v. *Railroad Co.*, 82 N. Y. 427; *Twist* v. *Railroad Co.*, 39 Minn. 164; *Masser* v. *Railroad Co.*, 68 Iowa, 602; *McMahon* v. *Mayor*, 33 N. Y. 642; *McPhillips* v. *Railroad Co.*, 12 Daly (N. Y.) 365; *Railroad Co.* v. *Eininger*, 114 Ill. 83; *Achtenhagen* v. *Watertown*, 18 Wis. 347; *Ludwig* v. *Pillsbury*, 35 Minn. 256.

*Mr. A. S. Worthington* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

1. That the defendant's request for a peremptory instruction to the jury to find a verdict for the defendant, was properly refused, is a proposition that requires no great consideration from us. Clearly there was testimony that should go to a jury both upon the question of the defendant's negligence and upon that of the plaintiff's contributory negligence. To go no farther, on the one side, than the alleged violation of the municipal ordinances that have been cited by the defendant, a question of fact for the jury was there plainly presented. It was a question of fact for the jury whether, with reference to the first of those ordinances, the grade of the railroad was approximately even with the adjacent surface, so as to preclude the necessity of enclosing the tracks by a fence. It is argued that, because there was a curb outside of the tracks about eight inches above the surface of the roadway of the street, and because the tracks about the place of the accident were about eighteen inches above the adjacent curb, the tracks were not approximately even with the adjacent surface, and no fence was required. And it is argued, also, that on the south side of the track a fence was impracticable on account of the divergence of the

Richmond and Danville track or switch. But it is evident that the alleged elevation of the tracks above the adjacent surface was no barrier against temptation to cross the tracks, which was the very thing against which the ordinance sought to guard; for the plaintiff had been in the habit of crossing there for a year before the accident, apparently with the knowledge of the officers of the railroad company in charge at the place, and certainly without protest or objection by them, so far as the record discloses. And the record discloses the fact that subsequently to the occurrence of the accident, the defendant constructed a fence on the north side of the track, such as was required by the ordinance, and which presents an effectual barrier against crossing the tracks. Certainly, it was more favorable to the defendant to let the question go to the jury to determine whether this disregard of the ordinance was in fact a violation of it, than for the court to decide, as a question of law, that there had not been compliance by the defendant with the ordinance. And the same observation is proper in regard to the other ordinance and the matter of a signal light on the advancing end of the engine or tender. But it is due to the appellant to say that no great reliance is placed upon this point, either in the brief or in the argument. Greater reliance is placed upon the questions raised by the other assignments of error, in connection with which the contributory negligence, with which it is sought to charge the plaintiff, may be considered.

2. The next assignment of error to be considered is that the trial court refused to hold, as matter of law, that the plaintiff was bound to exercise the same degree of care and prudence that an adult would have been bound to exercise under like circumstances.

It is not perhaps entirely correct to say, as is here implied, by the appellant, that there was any such refusal by the court below as intimated. The court was not requested by the defendant to make any such ruling; and, of course, it

could not refuse what it was not requested to do. But it did, on behalf of the plaintiff, and in the second instruction requested by the plaintiff, lay down the converse of the rule. That instruction is in the following words:

"In considering the question whether the plaintiff was guilty of contributory negligence, the jury are instructed that the rule of the law in regard to the negligence of an adult and the rule in regard to that of an infant of tender years are quite different. By the adult there must be given that care and attention for his own protection that is ordinarily exercised by persons of intelligence and discretion. If he fails to give it, his injury is the result of his own folly and can not be visited on another. Of an infant of tender years less discretion is required, and the degree depends upon his age and knowledge. Of a child of three years of age less caution would be required than of one of seven, and of a child of seven less than one of twelve or fifteen. The caution required is according to the maturity and capacity of the child. That is to be determined in this case by the circumstances of this particular case."

And to this instruction as requested by the plaintiff and as given by the court with some explanations, which do not in any manner materially alter it, the defendant excepted; and such exception may be regarded as a sufficient basis for the assignment of error now made.

In support of the contention in this regard, the appellant cites numerous cases in which, as it claims, children, varying in age from five to thirteen years, have been held, as matter of law, guilty of contributory negligence. But it is unnecessary for us to consider those cases. One or two of them may support the appellant's proposition; and that there may be cases where, upon the clear and uncontradicted evidence, even an infant of tender years may be held, as matter of law, to the result of his own acts as negligence or contributory negligence, may be conceded, as was conceded in the case of *McMahon* v. *Northern Central Railway*

*Co.*, 39 Md. 438, 449. But that is not the proposition here advanced by the appellant. The proposition here is, that for the purpose of determining whether a plaintiff, a child of the age of about twelve years, is liable to the charge of contributory negligence, he is to be held precisely to the same degree of care and prudence that an adult would have been bound to exercise under the circumstances. In answer to the proposition it seems to us to be sufficient to say that it is directly in the face of the decision of the Supreme Court of the United States in the case of *Railroad Co.* v. *Gladmon*, 15 Wall. 401, from the opinion in which the plaintiff's instruction excepted to has been taken *verbatim.* The rule laid down in that case was reiterated by the same court in the case of *Railroad Co.* v. *Stout*, 17 Wall. 660; and we are not advised that it has ever been modified in any respect. That rule we have been called upon to apply in several cases in this court. *Railroad Co.* v. *Falvey*, 5 App. D. C. 176; *Railroad Co.* v. *Webster*, 6 App. D. C. 182; *Reiners* v. *W. & G. RR. Co.*, 9 App. D. C. 19. And we must regard it as decisive of the question now raised. As we have intimated, the question raised under this assignment of error is not whether, under all the circumstances of this case, the plaintiff, as matter of law, should be adjudged to have been guilty of contributory negligence; but whether, under circumstances to be submitted to a jury for determination of the issue of contributory negligence, the jury should be instructed that there was no difference between an adult and a child of tender years with regard to such issue. It would be error so to hold; and there was no error in holding the reverse.

3. The appellant's third assignment of error is founded upon the allowance by the trial court of the first instruction requested by the plaintiff to be given to the jury. That instruction is in the following words:

"The jury are instructed that if they find that the injuries received by the plaintiff on the evening of the 10th of

December, 1894, by being run over by a locomotive on the defendant's railroad track on Maryland avenue, in the city of Washington, were caused by the negligence of some person or persons in the employ of the defendant company, then the plaintiff is entitled to a verdict, unless the jury further find from the evidence that the plaintiff's own negligence contributed to the injury; and in determining whether the injury was caused by the negligence of the defendant's employees or any of them the jury have a right to take into consideration the facts: (1) that the railroad tracks at the point where the accident occurred were not protected by a fence, as required by the regulation of the District Commissioners, which is in evidence; (2) whether the light at the front end of the train was substantially such a light as required by the regulation of the District Commissioners, given in evidence, or such a light as was requisite to give proper warning of the approach of the train; (3) the distance passed over by the train after it struck the plaintiff before it was brought to a stop, and (4) all the evidence in the case tending to show whether or not the persons in charge of the engine drawing the train were keeping a proper lookout, and the jury will consider all the evidence in the case bearing upon these questions."

To this instruction exception was taken, on the ground that it was not based upon any sufficient testimony in the case, and that it was, in part at least, inconsistent with the allegations of the declaration. That the instruction is inaptly drawn, is loose in its phraseology and grammatical construction, and is perhaps to some extent misleading, seems to be quite clear; and if it stood alone, there might be grave question whether it would not warrant a reversal of the judgment. It refers to certain suggestions for consideration as being *facts*, when only one of the matters suggested could, with any propriety of language, be so characterized; and even that one seems to assume that the failure of the railroad company to construct a fence at the

place of the accident was an act of negligence *per se*, without reference to the question of its practicability or to the question whether the relation of the tracks at that place to the adjoining surface of the roadway justified the application thereto of the ordinance in regard to fencing. But the instruction does not stand alone; it was given to the jury by the court with an explanation so clear and ample as to leave no doubt of its meaning. The court informed the jury that they were not to understand from the instruction that the mere failure to keep a fence at this point should be regarded as being *per se* an act of negligence; but that it was for the jury to determine, under all the circumstances of the case, whether it was practicable and proper to have a fence at that point. Similarly in regard to the signal light upon the engine, the jury were told that the failure of the company to provide such a light for the engine as was required by the regulation of the Commissioners would not be an act of negligence, if the light that was there was a proper and sufficient one to give warning of the approach of the train. The instruction, so construed and explained, was as favorable to the defendant as it could reasonably expect.

The third and fourth suggestions of the instruction seem to be based upon the opinion of the Supreme Court of the United States in the case of the *Grand Trunk Rwy. Co.* v. *Ives*, 144 U. S. 408, 427; but it is argued that there was here no testimony to support them. Precisely the same argument, on the same grounds, was made in that case, and if, in this regard, there is any difference between that case and this, we fail to find it. There the Supreme Court, by Mr. Justice Lamar, said:

" But it is claimed that the last paragraph of that portion of the charge last above quoted, referring to the question whether or not the trainmen kept a proper lookout and managed the train in a prudent and cautious manner, was erroneous, because, so it is claimed, 'there was no evidence

12 Ct. App.—40

that the train hands kept no proper lookout, &c.' This
contention is also without merit.   There was evidence that
the ordinary signals of blowing the whistle and ringing the
bell at the crossing were not given, and that the train was
running at a more rapid rate than was permitted by the
city ordinance.   If the jury believed that evidence, they
must necessarily have found that the trainmen did not keep
a proper lookout, and did not manage the train in a prudent
and careful manner."

4. The refusal of the trial court to grant the sixth instruc-
tion requested by the defendant is the ground for the fourth
and last assignment of error that is urged upon us.   That
instruction was in the following words:

"If the jury shall be satisfied from the evidence that a
lighted lantern was suspended on the end of the engine
which was being 'backed' into the city before and at the
time of the accident, then and in that case it is immaterial,
under the declaration in this case, whether or not such
lighted lantern fulfilled the requirements of the police
regulations on that subject."

Under the exception to the refusal of this instruction,
and to some extent also under the exception to the granting
of the first instruction requested by the plaintiff, which we
have just considered, the theory of the appellant seems to
be that there was a fatal variance between the plaintiff's
declaration and the proof in the case.   It is argued that
the allegation of the declaration is that there was no light
on the rear part of the engine, which was the part that was
moving forward; and that, as the testimony shows, and may
be assumed to show conclusively, that there was a lighted
lantern on such rear part, this element of a light is entirely
eliminated from the controversy.   But we do not under-
stand the allegation of the declaration to be as claimed in
this argument.   The words of the declaration are that "there
was no light on the rear part of said engine to indicate its
approach," and the reasonable intendment of this state-

ment is, not that there was no light at all upon the rear part of the engine, but that there was no such light as would indicate its approach. And it was left to the jury, as already stated, to determine whether there was such a light, regardless of the fact that it may not have conformed to the regulation of the Commissioners. This was as favorable to the defendant as it had any good reason to expect; and the sixth instruction requested by the defendant was properly rejected.

We find no error in the record of this case that, in our opinion, would justify a reversal of the judgment; and that judgment must therefore be *affirmed, with costs. And it is so ordered.*